SOUTHERN INVESTMENT COMPANY v. POSTAL TELEGRAPH-
CABLE COMPANY.

(Filed 18 October, 1911.)

1. Contracts—Breach—Tort Feasor—Damages.

In the absence of specific stipulation, where one has entered
into the enjoyment of a right conferred by contract, an interfer-
ence with such enjoyment on the part of a tort feasor is not
imputable to the grantor.

2. Tenants in Common—Leases by One—Acts Prejudicial—Rights
of Cotenants.

A tenant in common is not permitted to do acts which are
prejudicial to his cotenant's estate, or to carve out his own part
of the estate or to convey it in such a manner as to compel his
cotenant to take his share in certain parts.

3. Same—Easements—Severalty.

Servitudes and easements upon lands cannot be granted by a
tenant in common without the consent of his cotenants, and any
one of them may prevent it until the estate is divided into sep-
arate parts; and when each holds his own part in severalty,
either of them may impose the servitude and grant the easement
upon his own share, as he pleases.

4. Same—Damages—Tort Feasor.

When a tenant in common has granted to a stranger for a
valuable consideration a license which he has no right to make,
whether it is a lease, an easement, or a revocable license, and
the delivery and enjoyment of the privilege has been interfered
with and prevented by his cotenant, the cotenant having the
right thus to interfere is not a tort feasor, and the grantee may
recover in his action against his grantor such damages incident
to the wrong as were in the reasonable contemplation of the
parties and capable of ascertainment with a reasonable degree
of certainty.

5. Same—Telegraph—Railroads—Consent—Cotenant.

When a telegraph company and a railroad company are ten-
ants in common in a telegraph line upon and along the right of
way of the latter under a contract for a term of years, which
was to be used by both companies for their respective businesses,
with stipulations as to the number of wires to be strung and
used for each and for additional wires to be strung and used
for like purposes, imposing mutual burdens on the contracting
parties for their maintenance, etc., the telegraph company has

no right to grant to another corporation, in furtherance of a disconnected and separate business, the privilege of affixing two telephone wires to these poles and of imposing this additional burden upon the owners, in the absence of an express provision to that effect and without the consent of its cotenant.

6. Measure of Damages—Telegraphs—Railroads—In Contemplation of Lease—Reasonable Contemplation—Ascertainment.

The defendant telegraph company and a railroad company were tenants in common of a line of telegraph along the latter's right of way, and the defendant leased to a separate and independent telephone company the right to the use of the poles for the purpose of stringing and operating two telephone wires for the use of the lessee. In the contract of lease there was a provision that either of the parties thereto may terminate the lease upon giving thirty days previous notice to the other. The railroad company, the cotenant of the defendant, prevented the licensee from stringing the wires before the time agreed upon for the commencement of the lease: *Held*, plaintiff, the licensee, was entitled to recover its reasonable costs and expenses incurred in making proper preparations to carry out the contract, including freight charges paid in delivering the material along the route and the loss incident to purchase and resale where the same could not be used to advantage or otherwise disposed of, under the rule that they must have been within the reasonable contemplation of the parties and reasonably capable of ascertainment.

7. Instructions—Harmless Error—Appeal and Error.

When it would have been proper for the court to have instructed the jury to find for the plaintiff, if they found the facts to be as testified to by the witnesses, the defendant is not prejudiced by an instruction given to the effect that they should so find upon certain phases of the evidence.

APPEAL from *O. H. Allen, J.,* at May Term, 1911, of BEAU-FORT.

Civil action to recover damages for alleged breach of contract on part of defendant. On issues submitted, there was verdict in favor of plaintiff, assessing his damages at $1,000. Judgment on the verdict, and defendant excepted and appealed.

*Small, McLean & McMullan for plaintiff.*
*R. C. Strong and W. B. Rodman for defendant.*

HOKE, J.   On the trial it appeared that, on or about 1 February, 1909, plaintiff, a corporation "owning and operating a

telephone line and system" into and out of New Bern, Washington, Farmville, and Greenville, N. C., being desirous of extending the same to Wilson and Raleigh, N. C., and intermediate points, entered into negotiations with defendant corporation, with a view of securing a right or license to use, for the purpose indicated, a line of poles to said points, placed along the right of way of the Raleigh and Pamlico Sound Railroad Company, and in which defendant had acquired an interest by contract with the latter company, and, on 1 May, 1909, a written contract, properly executed, was made between plaintiff and defendant, by which said defendant, in consideration of $376 per annum, payable semiannually in advance, granted to plaintiff, termed in the contract licensee, the right to attach to said poles along said route two wires, to be used only as telephone wires and for no other purpose, together with necessary brackets, insulators, etc. This agreement contained a further stipulation to the effect that the same could be terminated by either party on giving to the other thirty days written notice of such intent, and, in which case, the licensee should have the privilege of removing said wires, fixtures, etc.

It appeared, further, that the interest of defendant company, a corporation doing a telegraph business, was acquired and set forth in a written contract, duly executed, entered into between said defendant and the Raleigh and Pamlico Sound Railroad Company in August, 1905, by which the two contracting parties were to own said poles as tenants in common for twenty-five years, and on termination of the contract the telegraph company had the right to remove the wires and fixtures placed by that company, and the poles and such wires as the railroad company had placed to be and remain as the property of the railroad. This latter contract contained express provision for two wires to be used in the telegraph business, with the right and privilege of either to place additional wires and fixtures thereon as the said business might require, and also made minute specifications as to user of said wires in doing telegraph work for railroad business and for the general public and as to the different duties and burdens imposed upon the two contracting parties in the operation and maintenance of the line.

It was further made to appear that the rights and interests of the railroad company in the railroad, its franchise, the right of way and the said poles thereon, were subsequently acquired and held by the Norfolk and Southern Railway, which last mentioned road, by proceedings had, was, at the time of the alleged breach of contract between plaintiff and defendant and at the time same was made, in the hands and control of receivers appointed by the Federal Court.

There was evidence on the part of plaintiff tending to show that as soon as the contract between plaintiff and defendant had been duly made and executed, payment of the first installment of rent having .been postponed by mutual consent of the parties, the plaintiff proceeded to purchase and distribute along the railroad line the necessary equipment and material to construct the plant and install the telephone system as contemplated and provided by the contract, and made an effort to affix the wires to the poles, when it was interfered with and the work stopped by the receivers, claiming the right to do so, and plaintiff was forced to give over its purpose and dispose of the material purchased at considerable loss.

On this question, H. Susman, a witness for plaintiff, testified that the material and equipment, having been purchased, was fitted for the line to Wilson and Raleigh, could not be used on the portions of line already constructed, and he was forced to sell it at considerable loss, which, with the freight paid for its delivery along the route and preliminary work, reasonable and necessary in preparation, amounted to $1,398. It appeared further, that the receivers were resisting the right of defendant company to any other or further use of the poles, and had filed a petition in the cause, praying that the road be relieved of the stipulations of their contract with defendant, and, further, that when it was disclosed that the action of the receivers would operate to prevent plaintiffs from exercising the rights and privileges granted in the contract between plaintiff and defendant, said defendant, on 9 June, 1909, gave due notice in writing that it elected to terminate its contract in thirty days from said date, etc.

On these, the controlling facts relevant to the inquiry, the defendant assails the validity of plaintiff's recovery, contending: (1) That no breach of contract has been shown; (2) in any event, the damages should be only nominal. But in our opinion, neither position can be sustained. Undoubtedly, as insisted on by defendant, it is a correct general proposition that, in the absence of specific stipulation, where one has entered into the enjoyment of a right conferred by contract, an interference with such enjoyment on the part of a tort feasor is not imputable to the grantor. The authorities cited by defendant are apt in support of that position. *Hurest v. Marx,* 67 Mo. App., 418; *Moore v. Webber,* 71 Pa. St., 429; *Underwood v. Birchard,* 47 Vt., 305. But no such case is presented here. On the contrary, it appears that the receivers of the railroad are contending that the road should no longer be bound in any way by the terms of the contract between the defendant and the railroad, and have filed a petition that the same be set aside. But, without reference to the ultimate determination of the questions involved in that proceeding, and assuming that the defendant's position is sustained and that their contract with the railroad holds, we find nothing in it which confers upon defendant the right to make the contract upon which plaintiff has brought suit. A perusal of that agreement will disclose that, under its provisions, this defendant and the railroad, or its successors and assigns, became tenants in common of these poles for the term of twenty-five years, for the purpose of operating a telegraph system along this route, to serve both the general public and the railroad company. Specific stipulation is made for two wires, in the first instance, and the right and privilege of either of contracting parties to affix additional wires as its business might require, interchangeable duties and burdens are provided for between the contracting parties, in reference to the operation of the system and the maintenance and repair of the line, its wires and fixtures, etc. In such case, and in the absence of specific provision conferring the power and without permission given by its cotenant, the defendant had no right to grant to plaintiffs, in furtherance of a disconnected and separate business, the privilege of affixing two telephone

wires to these poles and of imposing this additional burden upon the owners. *Murray v. Haverty,* 70 Ill., 318; *Marshall v. Trumbull,* 28 Conn., 183; *Hutchinson v. Chase,* 39 Me., 509; 4 Kent's Commentaries, pp. 508-513. In *Hutchinson's case, supra, Rice, J.,* delivering the opinion, said: "The general rule seems to be well settled that one tenant in common cannot, as against his cotenant, convey any part of the common property by metes and bounds, or even an undivided portion of such part. *Bartlett v. Harlow,* 12 Mass., 348; *Peabody v. Minot,* 24 Pick., 329; *Griswold v. Johnson,* 5 Conn., 366; *Smith v. Benson,* 9 Vt. The reason is obvious. His title is to an undivided share of the whole, and he is not authorized to carve out his own part, nor to convey in such a manner as to compel his cotenants to take their shares in several distinct parcels, such as he may please. *Great Falls Co. v. Worcester,* 15 N. H., 412. Even though his deed may bind him by way of estoppel, as against the cotenants, such deed is inoperative and void. 4 Kent's Commentaries, 368. Though tenants in common are, in legal contemplation, all seized of each and every part of the estate, still they are not permitted to do acts which are prejudicial to their cotenants." And further: "As one tenant in common cannot convey the entire estate, or the whole of any portion thereof, or give a valid release for injuries done thereto, so, too, and for the same reasons, he cannot subject the common property to particular servitudes, by which the rights of his cotenants will be affected. These servitudes, or easements, must be created by the owner, and one tenant in common cannot establish them, upon the common property, without the consent of his cotenant. 3 Kent's Com., 436; 2 Hilliard's Abbr., 118. Such, also, is the rule of the civil law. He who has the property of an estate only in common with others, without any division of the several shares, cannot subject any part of it to a service without the consent of all his copartners; and any one of them may hinder it until, the estate being divided into shares, every one may impose a service on his own share if he think fit. And likewise he who possesses in common and undivided a portion of the land or tenement to which the service is so due cannot by himself free the land or tenement which owes the

service; but the service remains for the portions of others. For these services are for every part of the land or tenement to which they are due, and every one of the proprietors has an interest in the service for his own portion." This, we think, being the correct principle, whether the right which defendant undertook to grant plaintiff be considered a lease, as argued, an easement, or revocable license—and we think it clear that it was the latter—there has been a breach of contract on the part of defendant.

For valuable consideration, defendant has made a binding agreement, granting to plaintiff a license which he had no right to make; the delivery and the enjoyment of the privilege has been interfered with and prevented, not by a tort feasor, but by one having right, and, on authority, plaintiff should be allowed to recover. *Kerrison v. Smith,* L. R. Q. B. Div. 1897, p. 445; *Smart v. Lewis,* 109 E. C. L., 282, 717. *Despeaux v. De Lane,* 71 N. J. L., 280, and in our own reports the case of *Sloan v. Hart,* 150 N. C., 269, is in recognition of the same general principle. The court, therefore, committed no error to defendant's prejudice in charging the jury on the question of breach of contract as he did, in effect, "that defendant was responsible if plaintiff was interrupted in the enjoyment of the rights bargained, by reason of litigation and difficulties arising between the railroad and defendant and of which defendant had knowledge at the time it made the contract. In our view, he might well have told the jury, if they believed the evidence, there had been a breach of contract. On the question of damages, his Honor, in general terms, charged the jury that if a breach of contract was established the plaintiff was entitled to recover the damages, incident to the wrong, which were in the reasonable contemplation of the parties, and, more specifically, and to the extent they were in such contemplation, they could allow the reasonable costs and expenses incurred by plaintiff in making proper preparation to carry out the contract, including cost of survey, the freight charges paid in delivering the material along the route, and the loss incident to purchase and resale of material where the same could not be used to advantage or otherwise disposed of, etc.

Subject to the well recognized rule, stated by the court, that damages must be such as were in the reasonable contemplation of the parties and capable of ascertainment with a reasonable degree of certainty, a recovery for breach of contract is allowed as compensation for the loss sustained (*Hassard-Short v. Hardison,* 114 N. C., 485; Hale Damages, pp. 38-39), and plaintiff, having been induced by defendant's wrong to make this outlay, the amount should be made good to him. And we may not approve the position earnestly insisted on by defendant, that plaintiff should be restricted to nominal damages, by reason of notice given that defendant elected to terminate the contract in thirty days, the argument being that, as plaintiff would, in any event, have had to take down and remove the material in that time, he suffered no actual loss. This position rests upon the theory that the contract had been carried out and the notice duly given according to its terms, the resultant damage in such case being necessarily and entirely speculative; whereas, in fact and truth, the contract had been broken when the notice was given, and the damages claimed had been already suffered—certainly so before the notice ever became effective. This, too, is the correct view to take of *Kivett v. McKeithan,* 90 N. C., 106, in its application to the facts, an authority much relied on by defendant. In that case it was held "That a parol license, relating to land, either voluntary or supported by valuable consideration, may be revoked by the owner, without incurring liability in damages, when notice is given and reasonable opportunity afforded to remove the improvements put up thereunder." It will be noted that the decision proceeds upon the theory that no actionable wrong had been committed, and on that ground no damages were allowed. In our case a breach of contract has been established and, under correct rulings, damages therefor have been properly awarded. There is no error, and the judgment for plaintiff is affirmed.

No error.