[Civ. No. 2195.   Third Appellate District.—November 29, 1920.]

THE WATERFORD IRRIGATION DISTRICT, Respondent, v. TURLOCK IRRIGATION DISTRICT et al., Appellants.

[1] TENANCY IN COMMON—EASEMENT—CREATION BY TENANT AGAINST COTENANT.—One joint owner or tenant in common cannot create an easement in the common estate against his cotenant.

[2] ID.—SALE BY COTENANT—LIMITATION OF RIGHT.—A tenant in common of property has the right to dispose of his own undivided share, but such owner cannot sell the whole property, or any portion thereof, except his own, and if he undertakes to dispose of any larger interest his co-owners are not bound thereby.

[3] ID.—LEASE OF PROPERTY—RIGHT OF LESSEE.—One tenant in common may by either lease or license confer upon another person the right to occupy and use the property of the cotenancy as fully as such lessor or licensor himself might have used or occupied it, if such lease or license had not been granted.

[4] ID. — TENANCY IN COMMON OF DAM — USE BY THIRD PARTY — RIGHTS OF PARTIES.—Where a water district owning a dam in common with another water district confers upon a third district the right to the use of its canal leading to the dam so that water to which the latter is entitled is diverted by said dam into said canal, the co-owner of the dam cannot complain of such arrangement, where no additional burden is placed upon the dam by reason thereof.

[5] WATERS AND WATER RIGHTS—UTILIZATION OF WATERS—POLICY OF STATE.—The policy of the state with respect to the waters flow-

ing in non-navigable streams or even in nagivable streams where the use of the water thereof for purposes other than navigation may be had without material interference with navigability, is that such waters shall be so utilized as to produce the greatest amount of good of which they are capable to the industries of the state.

APPEAL from a judgment of the Superior Court of Stanislaus County. G. W. Nicol, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

P. H. Griffin for Appellants.

Dennett & Zion for Respondent.

HART, J.—This is an appeal by appellants from a judgment in favor of the plaintiff enjoining the defendants from interfering with the flow of sixty second-feet of water from the Tuolumne River into the canal of the Modesto Irrigation District and to restrain them from interfering in any way with the diversion of said water by plaintiff, the said sixty second-feet of water having been acquired by the plaintiff from the Sierra and San Francisco Power Company, a corporation, under a contract dated January 14, 1919.

The respondent has incorporated into its brief the written opinion of the Honorable G. W. Nicol, sitting as a judge in the trial in the county of Stanislaus, in deciding the case. Said opinion contains an accurate statement in substance of the general facts as they were, upon what we regard as sufficient evidence, found by the court and also a statement and a correct application of the principles of law pertinent to the issues as made by the pleadings and developed by the evidence. We, therefore, approve and adopt said opinion as part of the opinion herein of this court. The opinion referred to is as follows:

"The facts material to the question involved in this case may be briefly stated as follows: The plaintiff and the Turlock Irrigation District are both irrigation districts organized and existing under and by virtue of the California Irrigation District Act. The defendant, Turlock Irrigation District, and the Modesto Irrigation District are the

owners as tenants in common of a certain dam across the Tuolumne River a short distance above the town of La Grange, and commonly called the La Grange Dam.

"This dam was constructed by these two districts under a contract between them of date August 9, 1890. The dam was constructed at their joint expense, and is jointly owned by them in common. The Turlock District contains about 176,510 acres of land and the Modesto District 81,183 acres. The water to irrigate these lands is diverted by means of this dam into the canals of the districts. The Turlock Canal is on the south side of the river and the Modesto Canal is on the north side, and each of said districts is the exclusive owner of its own canal, diverting water from the said dam.

"It appears from the evidence that until the water in the river falls to about 500 second-feet the Modesto outlet, owing to its situation, controls the flow, but after the water falls below 500 second-feet the Turlock gates then control the flow of the water.

"The plaintiff, The Waterford Irrigation District, in order to irrigate the lands contained within its boundaries, diverts the water from the Tuolumne River at the said La Grange Dam, through the canal of the Modesto Irrigation District. The plaintiff has acquired the right to divert the natural flow of said river water for the purposes of irrigation. This right is based upon an appropriation made in 1913, and is subsequent and subject to the rights of the Modesto and Turlock Irrigation Districts.

"In 1916, the plaintiff and the Modesto Irrigation District entered into a contract by which the plaintiff paid to the Modesto District $254,000, and in consideration thereof the Modesto District agreed to enlarge its diverting canal, from the La Grange Dam to certain points specified in the agreement, so that the canal would carry at least 250 second-feet of water for plaintiff in addition to the water required by the Modesto Irrigation District, and by this agreement the said Modesto Irrigation District agrees to carry through its said canal to the said Waterford Irrigation District, the water that it is entitled to, not exceeding 250 cubic feet per second. In pursuance of this agreement the Modesto District did enlarge its canal and did carry the waters to plaintiff, as therein provided.

"As before stated, the rights that the plaintiff acquired by appropriation are subsequent and subject to the prior rights of the Turlock and Modesto Irrigation Districts. During the season of 1919, the Modesto District carried and delivered to the plaintiff water, until in the month of June, when the natural flow of the river fell to such a point that it was not sufficient to supply the claims of the Modesto and Turlock Districts, and they were taking all the water then flowing in the river.

"The Sierra and San Francisco Power Company is the owner of a certain water right and diverting system commonly known as the La Grange Water Right and System, by which there is diverted from the Tuolumne River at a point known as Indian Bar sixty-six cubic feet of water per second. This point of diversion is thirteen or fourteen miles above the La Grange Dam, and the right to this sixty-six second-feet is prior in time to any of the water rights of the said irrigation districts.

"In January, 1919, the plaintiff purchased from the Sierra and San Francisco Power Company the right to all of said water for the period of six months, commencing on the first day of May and extending to the thirty-first day of October in each year, less the amount of water that the company is now furnishing to the town of La Grange, and for certain other purposes, which excepted amounts of water shall not exceed in the aggregate six cubic feet per second. Under the contract with the Sierra and San Francisco Power Company the period during which the six months' use of the said water shall run is variable, and may at the option of the Waterford Irrigation District begin on April 1st, or the fifteenth day of April, or the fifteenth day of May, or the last day of June of any year. Said period of use to continue for six consecutive months from the date of commencement as designated.

"In accordance with the agreement, the Sierra and San Francisco Power Company was in June, 1919, notified to turn into the Tuolumne River for the plaintiff sixty second-feet of water and plaintiff also notified the Turlock and Modesto Districts thereof. The Turlock District immediately notified the plaintiff and the Modesto District that it would not permit the water to be delivered to the Waterford Irrigation District through or by means of the La

Grange Dam without compensation being first paid to the Turlock Irrigation District. Upon receiving this notice the plaintiff commenced this action to restrain the Turlock District from interfering with the flow of the said sixty second-feet of water into the Modesto Canal for the use of plaintiff.

"As before stated, the La Grange Dam was built by the Modesto and Turlock Districts and is owned and' held by them as tenants in common. [1] The law is well settled that one joint owner or tenant in common cannot create an easement in the common estate against his cotenant. (*Pfeiffer* v. *Regents of University,* 74 Cal. 156, [15 Pac. 622].) In *Southern Inv. Co.* v. *Postal Telegraph Cable Co.,* 156 N. C. 259, [Ann. Cas. 1913A, 224, 72 S. E. 361], it was held that when a telegraph company and a railroad company having become tenants in common for a period of years of poles along the railroad right of way for the purpose of a telegraph system, to serve both the public and the railroad, the telegraph company could not, in the absence of specific provision in their contract conferring the power, and without permission of its cotenant, the railroad company, give a telephone company the right to place wires thereon for telephone purposes. That the telegraph company had no right to grant to another, in furtherance of a disconnected and separate business the privilege of affixing two telephone wires to these poles, and of imposing this additional burden upon the owners. (*Palmer* v. *Palmer,* 150 N. Y. 139, [55 Am. St. Rep. 653, 44 N. E. 966]; *Charleston etc. R. R. Co.* v. *Leech,* 33 S. C. 175, [26 Am. St. Rep. 667, 11 S. E. 631].) [2] A tenant in common of property has the right to dispose of its own undivided share, but such owner cannot sell the whole property, nor any portion thereof, except his own; and if he undertakes to dispose of any larger interest his co-owners are not bound thereby. (*Tuttle* v. *Campbell,* 74 Mich. 652, [16 Am. St. Rep. 652, 42 N. W. 384].) [3] One tenant in common may by either lease or license confer upon another person the right to occupy and use the property of the cotenancy as fully as such lessor or licensor himself might have used or occupied it, if such lease or license had not been granted. (*Lee Chuck* v. *Quan Wo Chung & Co.,* 91 Cal. 593, 598, [28 Pac. 45].)

[4] ''The contract between the Waterford and Modesto Irrigation Districts gives to the plaintiff a right to the use of the Modesto Canal for the purpose of conveying water as therein provided, and this grant of a right to the use of said canal to convey water necessarily carries with it a right to the use of the La Grange Dam, as the said dam is but an incident to the canal in the diversion of water from the Tuolumne River. This contract in no manner attempts to grant to the Waterford Irrigation District any right or privilege to use the dam for any other purpose than that to which it had theretofore been used by its owners. This contract does not interfere with the full use of the dam by the Turlock Irrigation District, nor does it place upon it any additional burden.

''The fact that the plaintiff diverts this sixty second-feet of water at the La Grange Dam and conveys the same through the Modesto Canal, and that owing to the low state of the water in the river during the end of the dry season the Turlock District has to adjust its gates, so as to allow this water to enter the Modesto Canal, casts no more of a burden on the Turlock Irrigation District than would have been cast upon it if the plaintiff had no contract with the Modesto District, but diverted its waters below the dam. Assuming that the plaintiff had no agreement with the Modesto District and had its own separate independent canal, which diverted the water from the river, below the La Grange Dam, then the Turlock Irrigation District would be required to adjust its gates, so as to allow this sixty second-feet of water to flow down the stream to the plaintiff, and in my opinion the fact that the plaintiff, under a contract, is using the Modesto Canal to carry this water, does not render the case any different from what it would be if the plaintiff's point of diversion was below the La Grange Dam. Or, suppose that the Modesto Irrigation District had purchased this water from the Sierra and San Francisco Power Company, instead of the plaintiff, and suppose that there was no contract between the Modesto and Turlock Districts as to their respective interests in any after acquired water rights, could it be claimed that the Modesto Irrigation District would not in that case be entitled to have the gates of the Turlock District so adjusted as to allow this water to flow into the Modesto Canal?

That it would be entitled to have the gates so adjusted, I think there can be no question, and equally clear to my mind is the right of the grantee to have this water flow into the said Modesto Canal.''

There is nothing to be added to what is said in the above opinion of the learned trial judge. It disposes of the points in the case correctly. The reasoning by which the conclusion is reached is sound. These further observations, however, may, with no impropriety, be suggested: That it does not appear from the evidence that the *water rights* of the Turlock District have been or will be interfered with or in the least impaired by the arrangement entered into between the Waterford and the Modesto Districts. Indeed, there is no claim made by the appellant that such a result has followed or will ensue from the use of the Modesto District's canal to carry the plaintiff's sixty second-feet of water to it. To the contrary, the written notice to the Waterford District and the Modesto District, protesting against the carrying out of the agreement between the two last-named districts, is based entirely upon the proposition that the Turlock District is entitled to be compensated for the use of the La Grange Dam by the plaintiff, stating that it objects to the use of the dam for the purpose of diverting the water of plaintiff and so delivering said water to it unless satisfactory arrangements for compensation therefor to the defendant were made. Moreover, the record discloses that, if any burden growing out of the agreement between the plaintiff and the Modesto District has at all been imposed upon the Turlock, it is a ''burden'' which merely involves a little extra inconvenience and some extra expense due to the necessity for a more frequent regulation or adjustment of the radial gates whereby the water is diverted into the Turlock's Canal. But, even as to this, there appears to be such a conflict in the testimony as to render immune from successful attack the court's finding that no such burden is added to the Turlock District by the act of the Modesto District in allowing the sixty second-feet of water belonging to the plaintiff to flow to the latter through the Modesto Canal. But, after all, the fact is, as the court below has found, and as is shown in the written opinion, there is nothing in the agreement between the plaintiff and the Modesto District which authorizes a greater

use of the La Grange Dam than that to which the Modesto could itself have put it. It is not denied but that the Modesto District, under the terms of the agreement whereby it and the Turlock District became joint owners or owners in common of the La Grange Dam, might have enlarged its own canal for its own individual purposes and thus have put said dam to a greater or more extensive use for its own purposes than it in the first instance had done or had occasion to do. If the Modesto District could do this, then why may it not transfer the right to do the same thing to others? (See Freeman on Cotenancy and Partition, secs. 251, 253, and *Lee Chuck* v. *Quan Wo Chang & Co.,* 91 Cal. 593, 598, [28 Pac. 45], wherein an affirmative answer to the question may be found.) If, therefore, it be true that the Turlock District has suffered some inconvenience and extra expense from the arrangement between the plaintiff and the Modesto District, it is only the inconvenience and the extra expense which are incident to the contract between itself and the Modesto District. As the court below said, in deciding the case, no such added burden is placed upon the Turlock District because of the agreement between the plaintiff and the Modesto District as that the full and convenient use of the dam by the Turlock District is in the slightest degree interfered with. Of course, the Modesto District could transfer no more than its interest or moiety in the cotenancy, nor, as has been already stated herein, would the transfer or grant of the easement or right to use the dam stand if by reason thereof there was a substantial or material interference with or impairment of the rights of the Turlock District in the cotenancy.

[5] It may further be added that the policy of the state with respect to the waters flowing in non-navigable streams, or even in navigable streams where the use of the waters thereof for purposes other than for navigation may be had without material interference with the navigability of such streams, is that such waters shall be so utilized as to produce the greatest amount of good to the industries of the state that they are capable of. It is, of course, an obvious proposition that the development of the state's resources—its agricultural, horticultural, stock-raising, power, and other like industries—depends largely upon the fullest use of the water supply of the state. As an essential corollary of this

proposition, it is against the policy of the state to permit
any waste by an appropriator of the waters flowing in the
rivers, creeks, and sloughs.   Every person owning a water
right must use it for a beneficial purpose, and where there
are two or more owners of water rights in the same stream,
the one must so use his right as not to interfere materially
with that of the other, the matter of superiority of right
in one by reason of priority of appropriation being, of
course, considered.   In other words, one of two owners of
water rights in the same stream will not be permitted so to use
his right as to prevent the other from using his, for in such
case there would in practical effect be a waste of the waters
of the stream, and this it is against the policy of this state
to allow.   The mere inconvenience, or even the matter of extra
expense, within limits which are not unreasonable, to which
a prior user may be subjected, will not avail to prevent a
subsequent appropriator from utilizing his right.   There
must be a substantial as distinguished from a mere tech-
nical or abstract damage to the right of the prior appro-
priator by the exercise by the subsequent appropriator of
his right to entitle the former to relief against any attempt
of the latter to utilize his right.   And the legislature,
doubtless having this proposition in view and also to the
end that there shall be no waste of the waters of the public
streams of the state by reason of any impracticability or
perhaps any impossibility of using such waters by two or
more appropriators, where each attempts to use the same
independently of each other, has provided for the condem-
nation by an irrigation district, subject to certain specified
conditions or qualifications, of property appropriated to
a public use by another irrigation district.   (Code Civ.
Proc., sec. 1240, subd. 5.)   If, it may also be observed, this
case were determinable by the principles governing in cases
in which the power of eminent domain is invoked, it is clear
that upon the evidence presented here, and much less upon the
findings, the defendants would not be entitled to more than
nominal damages, or perhaps such damages only as might
justly compensate them for the taking of the *use* of the
dam, there being no taking of the property or the dam
itself or severance, and the measure of damages in con-
demnation being the value of the property and the detri-
ment suffered from severance of the property taken from

that not taken. (Code Civ. Proc., sec. 1248; *Salt Lake City v. East Jordan Irr. Co.,* 40 Utah, 126, [121 Pac. 592].) Of course, these latter observations are not strictly germane or necessary to the decision herein, but they are suggested for the purpose only of emphasizing the proposition, above stated, that in a case of this kind, where one of several tenants in common of property necessary to be employed to further' the exercise of several water rights separately owned by such tenants grants or transfers to a third party the right to use such property for the purpose of facilitating the use of water to which he is entitled from the same stream, the other tenant must show that he has, by reason of the arrangement between his cotenant and such third party, suffered more than a mere trifling inconvenience and expense to warrant the nullification of the arrangement or agreement so made, and that the proposition so stated harmonizes with the policy of the state that none of the waters of its streams, available for the purposes of a beneficial use, shall be wasted or not used, but shall be employed to the fullest extent, and in no way impinges upon the rule that one joint tenant or tenant in common may not burden the tenancy with an easement or servitude of any kind.

For the reasons stated in the written opinion of the trial judge, the judgment is affirmed.

Prewett, P. J., *pro tem.,* and Burnett, J., concurred.