Kate Ragan KEARNS, Katherine Kearns Cheek, and Amos Ragan Kearns, Charles Leslie Kearns, and Katherine Kearns Cheek, Executors and Trustees under the Will of Gurney H. Kearns, Deceased, Plaintiffs,

v.

GAY APPAREL CORPORATION, Defendant.

Civ. A. No. C–219–G–62.

United States District Court M. D. North Carolina, Greensboro Division.

Aug. 4, 1964.

**476**

McLendon, Holderness, Brim & Brooks, Greensboro, N. C., for plaintiffs.

Adams, Kleemeier, Hagan & Hannah, Greensboro, N. C., for defendant.

HAYES, District Judge:

On February 1, 1948, Gurney Kearns of High Point, N. C., entered into a written contract with Gay Apparel Corporation, a New York Corporation by which Kearn leased to Gay Apparel Corporation his five story office building at 113 South Elm Street in Greensboro, N. C., for a period of 23 years from February 1, 1948 to January 31, 1971. The net rental for the period was Two Hundred Sixty Four Thousand and Five Hundred Dollars, payable in advance in monthly installments of $958.-34 on the first day of each month, beginning February 1, 1948. Gay Apparel also assumed payment of city and county taxes, water and lights; fire and casualty insurance; also keep the premises in repair at its expense. The contract remains in full force until it is rescinded by mutual consent. Williams. v. King, 247 N.C. 581, 583, 101 S.E.2d 308.

A tenant was occupying the premises. under a lease for three more years which was assigned to Gay Apparel who collected the rents.

Gay Apparel wanted the lease to be executed by a wholly owned subsidiary to be organized by it but Kearns refused because he regarded Gay Apparel as a solvent company and capable of complying with the covenants of the lease.

Gay Apparel, at the expiration of that. tenant's term, expended $21,000.00 to get the premises repaired to suit its. trade. It organized its wholly owned subsidiary corporation, Betty Gay of Greensboro, a North Carolina Corporation, to carry on a retail store in the premises. Joseph Nash, President of Gay Apparel, was also President of Betty Gay of Greensboro. Its home office was. its parent's home office in New York and E. J. Mallin of New York was attorney for both corporations.

Betty Gay occupied the premises until January 30, 1960. In December 1959, Betty Gay sold and assigned its lease and fixtures to John Irving Shoe Corporation for $10,000.00. John Irving Shoe Corporation assumed the obligations under the Kearns lease, with the consent of Kearns which was not given until Gay Apparel agreed to continue bound for the performance of its covenants in the contract. It represented that the Shoe Corporation was abundantly solvent and tried to induce Kearns to accept the Shoe Corporation and release Gay Apparel from the contract, but to no avail.

John Irving Shoe Corporation by its wholly owned subsidiary, Mary Jane Stores, occupied the premises from January 31, 1960 to August 9, 1961.

On May 1, 1961, John Irving Shoe Corporation petitioned for an arrangement under Chapter XI of the Bankruptcy Act in the United States Court at Boston, Mass., its home office. The rent due May 1st and each month thereafter was never paid.

On the night of August 9, 1961, the tenant began removing its merchandise and fixtures. Kearns procured attachment proceedings on August 10, 1961, and seized such of its property as remained in the building, agreeable to the provisions of the lease.

Plaintiff inquired of defendant about pursuing John Irving Shoe Corporation in the Bankruptcy court and was advised to do so, as Betty Gay denied any liability to Kearns. Yet Betty Gay, under oath by its President, Joseph Nash and E. J. Mallin, its attorney, filed a claim in the sum of $145,725.78 for its breach of the Kearns contract which the Shoe Corporation has assumed.

Plaintiff expended $6,274.16 in the Bankruptcy proceeding and the attachment proceeding and realized only $2,034.00 or sustained a net loss of $4,240.16, in its effort to hold John Irving Shoe Corporation liable.

The bankruptcy of the assignee was another breach of the contract under paragraph 26.

On October 4, 1961, plaintiff wrote a letter by registered mail to the defendant, setting forth in detail the numerous defaults under the lease and demanded compliance. Defendant did nothing to restore compliance and denied liability. To all intents and purposes it completely abandoned the contract. Womble v. Leigh, 195 N.C. 282; Weinstein v. Griffin, 241 N.C. 161.

On November 3, 1961, plaintiff wrote the letter [1] appearing in the margin, stating it was terminating the lease in accordance with paragraph 27 of the contract "without prejudice to its rights to sue for the defaults under the lease". Here it is appropriate to quote paragraph 27 of the lease.[2]

1.
"North Carolina
Guilford County

To: Gay Apparel Corporation, Lessee
307 West 36th Street
New York, New York.

Betty Gay of Greensboro, Inc., Assignee
307 West 36th Street
New York, New York

Mary Jane Stores of Pittsburg, Inc. Assignee
119 Beach Street
Boston, Massachusetts.

Notice is hereby given that each of you have broken the conditions of your lease from me dated the 1st day of February, 1948, on the premises known as 113 South Elm Street in the City of Greensboro, North Carolina, on account of your failure to pay the rent as in said lease provided for the months of April, May, June, July, August, September, October and November, 1961, and on account of your failure to repair and maintain the building as required by said lease and your failure to comply with the building code requirements of the City of Greensboro.

Thirty days' notice of your breach of said lease having been given by me to you, pursuant to paragraph 27 of the lease, by registered letter dated October 4, 1951, I hereby declare the said lease terminated and I am taking immediate possession of the premises as provided by the terms of the said lease. This termination is made without prejudice to any other rights and causes of action which I may have against you or any of you on account of your defaults.

This the *3rd* day of *November*, 1961.
Gurney H. Kearns
Gurney H. Kearns
449 South Wrenn Street
High Point, N.C."

2.
"27. It is understood and agreed that if the Lessee shall fail or neglect to make any payment of the rent when due, or shall violate or fail to perform any of the covenants or commit a breach of any of the conditions herein set out, the Lessor, at his option, may thereupon terminate this lease, provided that the Lessor gives the Lessee thirty (30) days' notice of such breach (except in the case of in-

 The lessee now contends that the letter not only terminated the lease but extinguished all claims for damages, especially damages for rents during the unexpired term. Ordinarily the termination of a lease by one party and assented to by the other party constitutes a surrender and acceptance and precludes damages for the future. The principle has no application in this case because the Notice expressly states it is "without prejudice to any other rights and causes of action which I had against you or any of you on account of your defaults". Contracts are to be construed from the entire instrument and every essential part must be given its clear interpretation and operation. Atlantic & N. C. Railroad Co. v. Atlantic & N. C. Railroad, 147 N.C. 368, 382, 61 S.E. 185, 23 L.R.A.,N.S., 223. It would be necessary to ignore entirely this clause in paragraph 27 as well as the last sentence in the Notice to conclude that the Notice extinguished damages for default. No authority in support of such an interpretation is given nor have we found one to uphold it.

The purpose of paragraph 27 is to empower the landlord to repossess the premises without surrendering his cause of action for damages arising from the defaults. That is precisely what the notice means.

 At that time plaintiff was entitled to sue for all of his damages which flowed from the defaults, past, present and prospective. Southern Investment Co. v. Postal Telegraph Co., 156 N.C. 259, 265–266, 72 S.E. 361; Perkins v. Langdon, 237 N.C. 159, 74 S.E.2d 634; Monger v. Lutterloh, 195 N.C. 274, 142 S.E. 12; Womble v. Leigh, 195 N.C. 282, 142 S.E. 17. Compare Richman v. Jory Corporation, 183 F. 2d 667 (4cca). His cause of action was ripe and he could have sued the day

he sent the notice. The Notice could not extinguish that right for the termination was without prejudice to that right. It was so understood by plaintiff and defendant. It was not the intention of the plaintiff or defendant to waive the claim for damages. The conduct of both parties clearly shows this to be true.

It would be a travesty on justice to permit defendant to breach the contract as it did, force plaintiff either to let the property remain vacant or to take possession and forfeit his damages. Thus the defendant would profit by his own wrong and penalize the plaintiff unjustly.

 After defendant denied liability for any defaults by it or its assignee and abrogated its contract, the plaintiff thereafter acted by compulsion and not voluntarily to hold his loss to a minimum. The termination notice was directly caused by defendant's defaults. The defendant can not take advantage of its wrongful conduct.

 The total breach of a contract partly performed creates a cause of action in favor of the aggrieved party, entitling him to recover all damages sustained by the breach which include past, present and prospective damages, reasonably flowing from such breach fairly within contemplation of the parties and capable of being ascertained with a reasonable degree of certainty. Cary v. Harris, 178 N.C. 624, 101 S.E. 486; Perkins v. Langdon, 237 N.C. 159, 74 S.E.2d 634; Southern Investment Co. v. Postal Telegraph Co., 156 N.C. 259, 72 S.E. 361. Moreover, defendant has failed to show that plaintiff could have reduced the loss. Fidelity Bank of Durham v. Bloomfield, 246 N.C. 492, 501, 98 S.E.2d 865. It is stipulated that plaintiff used due diligence to minimize the loss.

solvency proceedings and other matters set forth in paragraph 26 hereof, wherein no notice is required), and the Lessee fails to cure such default within the said period of thirty days, and upon such default or defaults the Lessor may enter

the premises and expel the Lessee without any court order or proceedings, and without prejudice to any other right and causes of action, which the said Lessor may have against said Lessee on account of said default or defaults."

The damages recoverable are past due rents, taxes, special damages, repairs and restoration of premises to its former condition, not including the cost of demolition of 3rd, 4th and 5th floors, plus the present cash value of the loss in rents, all items aggregating $66,207.24.

A provision in a contract to pay attorney fees incurred in the collection of a debt or for a breach of contract is against public policy and is not enforceable in North Carolina. Parker v. Mecklenburg Realty Co., 195 N. C. 644, 143 S.E. 254.

Although defendant's violation of paragraph 9 in regard to repairs to the entire structure was the proximate cause of rendering the structure unsafe and caused the City authorities to require the demolition of the 3rd, 4th and 5th floors at a cost to the plaintiff of $9500.00, it is still a major alteration and not a repair for which the lessee is liable.