[Civ. No. 948.    Fifth Dist.    July 12, 1968.]

HENRY GARIBALDI et al., Plaintiffs and Appellants, v. CLARENCE GARIBALDI et al., Defendants and Respondents.

Daley, Patridge & Garrett and Richard B. Daley for Plaintiffs and Appellants.

Mazzera, Snyder & DeMartini, J. Calvert Snyder, Hughes, Maul, Fogerty & Dezzani, Charles F. Fogerty, John C. Weidman and G. E. Brewer for Defendants and Respondents.

CONLEY, P. J.—Two brothers, Henry Garibaldi and Clarence Garibaldi, and their sister, Elvira Levaggi, each owned an undivided one-third interest in common in approximately 1,500 acres of contiguous mountain land containing trees suitable for lumbering. Clarence Garibaldi wished to avail himself of the value of his share of the products from the property, and, without notifying his brother and sister, he made two contracts with Rowland Morris by which he purported to sell his timber rights in El Dorado County on sections 1 and 12, township 8 north, range 12 east, M.D.B.&M. These contracts, one dated in January 1961, and the other in July 1961, contained an agreement on the part of Clarence Garibaldi, in each instance, to sell to Rowland Morris 500,000 board feet of standing merchantable douglas fir and 500,000 board feet of standing merchantable ponderosa pine. Henry Garibaldi and Elvira Levaggi did not join in executing any of the contracts; these agreements unquestionably were made without the consent or approval of the two latter persons and over their opposition.

Commencing about October 1, 1963, defendant Rowland Morris, acting through an agent or employee named Roy Collier, began cutting trees and removing logs from the property; later Morris, through the defendants Neilson Logging Co., Inc. and Alvin H. Neilson, cut additional trees on the described land, pursuant to whatever rights the defendant Morris had acquired by virtue of the two written contracts with Clarence Garibaldi.

The plaintiffs, Henry Garibaldi and Elvira Levaggi, brought this action against Clarence Garibaldi, Rowland Morris, Roy Collier and the Neilsons for the value of their share of the trees cut, multiplied in legally applicable instances by the penalties prescribed by law, and also asked for damages by reason of species of trees cut which were not specified in the contracts, and for waste, including the repair of the roads

and the clearing of a water course of obstacles placed therein by the defendants; the alleged general damages for waste were fixed at $25,000. The court after an extensive presentation of evidence and citation of applicable authorities ordered judgment in favor of the plaintiffs covering all of the items of claimed detriment.

The defendants, after the entry of the judgment, made motions for a new trial, and, after argument and submission of authorities, the court granted the motions on a single specified ground:

"It Is Ordered that the respective motions be and each of them is hereby Granted on the ground of prejudicial error in law occurring at the trial by the ruling which sustained the plaintiffs' objection to the admissibility and introduction of certain evidence tending to show the extent of the co-tenancy timber holdings adjacent to but outside of the parcels of land delineated by the subject timber contracts."

Thus, the sole ground for the granting of a new trial is the alleged failure on the part of the trial court to permit the defendants to prove that the three owners in common were also owners of lands adjoining the two sections on which the cutting took place, defendants' theory being that, when there is a common ownership, each of the owners is entitled to realize the value of his own interest, and that in considering such a situation the court is entitled to view all of the contiguous lands owned by the persons involved so that if one of them takes no more than his legitimate fractional interest of the total the other owners in common may not complain.

It should be noted at this point that, although the rule just stated is a sound and correct one, it would not follow mathematically that the one owner in common who thus becomes an activist and attempts to realize the value of his property would be entitled to take one-third of whatever trees are growing on a specific portion of the total contiguous lands involved. The rule above outlined is qualified by another rule of equal authority that one owner in common cannot take more than his fractional share in value of the products of the common property involved. When the value of trees as commercial products on a large area of land is considered, the mere stumpage value of single trees and their multiples does not give the final answer to the problem involved for the reason that many factors necessarily enter into such a calculation. The rule for the division of values does not depend wholly upon a counting of individual trees but rather by a

comparison of all of the trees in the area and a weighing of all of the commercial factors. Trees themselves differ with respect to their value as lumber, that is to say, whether or not the species and age and the conditions of growth have made the particular tree that is being considered suitable for lumber. The record shows that certain species and older trees, generally speaking, are more valuable than the younger trees and that there is great disparity in value as among different species of trees; whether custom and the rules of the forest service forbid the cutting of certain trees and permit the logging of others, the location of the trees to be cut with respect to the transportation of logs, the existence of roads or potential roads for the purpose of removal, whether or not the land where the trees are being grown is suitable for removal of logs and many other items of difference are all to be considered. The aliquot share of each of the owners in common depends rather on the value of the trees cut in their present location, than any mere counting of the trees. A forest differs greatly in its product from land devoted to the raising of fungible crops.

It should be noted in passing that the present requirements with respect to the form of the order for a new trial have been observed by the trial judge. In the late Supreme Court case, *Mercer* v. *Perez,* 68 Cal.2d 104, 112-113 [65 Cal. Rptr. 315, 436 P.2d 315], an important change in the statute relative to motions for a new trial is discussed; the opinion points out the addition of a requirement that the court must specify not only the ground or grounds upon which the new trial is granted, but also its *reasons for doing so.* If it does *not do so,* the court must file a separate written specification of reasons within ten days, and the court continues: ''As orders granting motions for new trial are infrequently reversed, it is essential that they be the product of a mature and careful reflection on the part of the judge. Society has a manifest interest in avoiding needless retrials: they cause hardship to the litigants, delay the administration of justice, and result in social and economic waste. (*Jehl* v. *Southern Pac. Co.* (1967) 66 Cal.2d 821, 828-829, fn. 9 [59 Cal.Rptr. 276, 427 P.2d 988].) Accordingly, one of the functions of the requirement of specification of reasons is to promote judicial deliberation before judicial action, and thereby 'discourage hasty or ill-considered orders for new trial.' (Review of Selected 1965 Code Legislation (Cont.Ed. Bar) p. 81.) This objective is furthered, it bears emphasizing, by the change in the law which now forbids the judge from shifting to the attorney for the

prevailing party the duty to prepare either the statement of grounds or the specification of reasons."

Appellants argue that the amended statute has not been followed, because they claim the court did not state its reasons for the ruling, but only the ground, and failed to file a specification of reasons later as required by the code amendment.

However, the order which specifies the sole ground to be prejudicial error in law occurring at the trial also sufficiently states the reason for the ruling when it continues and says that prejudicial error in law occurred "by the ruling which sustained the plaintiffs' objection to the admissibility and introduction of certain evidence tending to show the extent of the co-tenancy timber holdings adjacent to but outside of the parcels of land delineated by the subject timber contracts."

It is clear that the contracts gave the buyer the right to cut the merchantable ponderosa pine and douglas fir on the described property, and the question of law urged by the respondents is: can a cotenant legally convey all timber rights on a particular piece of property without the concurrence of the other cotenants if there is other jointly owned contiguous property, upon which is growing sufficient timber to satisfy the fractional interests in common of those cotenants not parties to the sale?

Several California cases are cited on this point: *Hihn* v. *Peck,* 18 Cal. 640; *McCord* v. *Oakland Quicksilver Min. Co.,* 64 Cal. 134 [27 P. 863, 49 Am.Rep. 686]; and *Fuller* v. *Montafi,* 55 Cal.App. 314 [203 P. 406]; and also *Graybiel* v. *Burke,* 124 Cal.App.2d 255 [268 P.2d 551].

In *Hihn* v. *Peck, supra,* 18 Cal. 640, plaintiff and defendants were tenants in common of a parcel of land containing 32,000 acres, of which plaintiff was entitled to 13/54ths. The plaintiff alleged that the land could not be divided among the owners without injury to them, that it was covered by a large and valuable timber growth, and that the defendants had been cutting the trees. The court held that the defendants being tenants in common had a right to the enjoyment of the common ownership and to cut timber and use or dispose of it to an extent corresponding to their respective shares of the estate; there was no allegation that they were exceeding this share or any allegation of other facts authorizing an injunction.

In *Fuller* v. *Montafi, supra,* 55 Cal.App. 314, 319-320, the court stated:

"In entering into their contract with Kneeland L. Fuller

the cross-complainants were knowingly dealing with a tenant in common of the real estate described therein, and were seeking to obtain from him the right to cut and carry away a large portion of the timber then growing upon said premises. The evidence sufficiently shows, and the court found, that a large part of said growing timber was of young and second-growth tan-bark oak trees too immature for cutting, and the cutting and destruction of which would, and in fact did, work great and irreparable injury to the said real estate. That the cutting of such timber would constitute waste as against the right and interest of the cotenant not consenting thereto may be taken to be settled law (2 Blackstone's Commentaries, 281; *Buckelew* v. *Estell*, 5 Cal. 108; *Silva* v. *Garcia*, 65 Cal. 591 [4 P. 628]; *Pardee* v. *Camden Lumber Co.*, 70 W.Va. 68 [73 S.E. 82, 43 L.R.A. N.S. 262]). It is also well settled that a tenant in common of real estate cannot lawfully himself do any act which would impair the rights of his cotenant in real estate (Tiffany on Real Property, sec. 993; *Nevels* v. *Kentucky Lumber Co.*, 108 Ky. 550 [56 S.W. 969, 94 Am.St.Rep. 388, 49 L.R.A. 416]). If this be true it follows that a tenant in common of real estate cannot lawfully transfer to another a right to do that which he cannot lawfully do in respect to said real property. It has accordingly been held that a tenant in common of land has no power to convey to a stranger the right to divert water from the land (*Pfeiffer* v. *Regents etc. of Cal.*, 74 Cal. 156 [15 P. 622]), or create an easement in the common estate against his cotenant (*Waterford Irr. Dist.* v. *Turlock Irr. Dist.*, 50 Cal.App. 213 [194 P. 757]; *Southern Investment Co.* v. *Postal Telegraph Co.*, 156 N.C. 259 [72 S.E. 361, Ann.Cas. 1913A 244]; *Moore* v. *Moore*, 4 Cal.Unrep. 190 [34 P. 90]). It follows from these authorities that Kneeland L. Fuller, the cross-defendant herein, could not lawfully have granted to the cross-complainants herein the right to enter upon the premises in question and do acts thereon in the way of cutting and removing the aforesaid growing timber therefrom, which acts, if done without first obtaining the agreement or consent of his other cotenant, would constitute waste which the latter would be entitled to enjoin. The cross-complainants in taking such contract and in attempting to execute the same did so at their peril, and hence would have no right to complain nor to recover damages against the other party to said contract when, without any fraud or collusion on his part, his cotenant in common rightfully enjoined them from committing or continuing acts of waste upon said real

estate in the course of the execution of the terms of said contract.''

McCord v. Oakland Quicksilver Min. Co., supra, 64 Cal. 134, 142-143, applied the rule of Hihn v. Peck, supra, and decided that each tenant in common of a mine was at least entitled to take out his share of the ore.

It is a reasonable argument of appellants that one cotenant should not be allowed to have all of the ponderosa pine cut and sold for his benefit in that it is obvious that different woods have different values; that differently aged trees would have different market values; trees in certain areas would be valued differently. Appellants correctly contend that logging must be performed in such a manner that the rights of those cotenants who do not consent to the contract are protected.

In 13 California Jurisprudence, Second Edition, Cotenancy, section 24, page 311, it is stated that: ''Cotenants have the right to the enjoyment of the estate, and to do any act in this connection that is a legitimate exercise of the right. This is true although in its use according to its nature the estate is likely to be consumed. Thus, if the common property is timberland, each tenant has the right to cut timber and dispose of it, at least to an extent corresponding to his share of the estate.''

It should be kept in mind that, while the contracts for the cutting of timber made between Clarence Garibaldi and Rowland Morris referred specifically only to two sections owned by the Garibaldi and Levaggi group and the actual cutting was so restricted, the relative rights of the owners in common would depend upon the relationship of the owners in common toward each other and would, therefore, cover all of the contiguous lands involved in their ownership. It is a false quanity on the part of the appellants to argue that the court is necessarily limited to an inquiry concerning the two sections covered by the contracts between Clarence Garibaldi and Morris. Inasmuch as the law relative to ownership in common gives to each one of such owners the right to attempt to realize the monetary value of his individual ownership, requiring at the same time that he must not exceed his fractional share of the total, there is no logical reason why, as now held by the trial court, the whole land ownership of all of the owners in common should not be considered. To illustrate the effect of what we have said, if it should develop that Clarence Garibaldi in his dealing with Rowland Morris has

not taken more than one-third of the value of the product of total ownership in common, to that extent he would be acting within his rights.

The order granting the new trial is affirmed. Respondents are to recover their costs on appeal.

Stone, J., and Gargano, J., concurred.