[No. 11772. In Bank.—November 18, 1887.]

## AURELIA PFEIFFER, APPELLANT, *v.* REGENTS OF THE UNIVERSITY OF CALIFORNIA ET AL., RESPONDENTS.

TENANTS IN COMMON — CANNOT CREATE OR CONVEY EASEMENT — RESERVATION. — A tenant in common of land has no power, as against his cotenant, to convey to a stranger the right to divert water from the land; nor can he, in a conveyance of his own interest in the common property, create such an easement by a reservation to himself for the benefit of adjoining land which he owns in severalty.

ID. — PARTITION — NECESSARY PARTIES. — In an action for the partition of land, it is not necessary to join as parties either a person to whom one of the co-tenants had attempted to convey an easement, nor a former cotenant, who, in the previous conveyance of his interest in the common property, had attempted to create an easement by reservation to himself.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*L. E. Bulkeley*, for Appellant.

A tenant in common cannot, either by conveyance to another, or by reservation to himself in a conveyance of his interest, create an easement in the common property. (*Marshall* v. *Trumbull*, 28 Conn. 183; *Adam* v. *Briggs Iron Co.*, 7 Cush. 361; *Crippen* v. *Morss*, 49 N. Y.

63; *Watkins* v. *Peck*, 13 N. H. 360, 381; 40 Am. Dec.
156; *Boston F. Co.* v. *Condit*, 19 N. J. Eq. 394; *Portmore* v.
*Bunn*, 3 Dowl. & R. 145; *D. & S. R'y Co.* v. *Wawn*, 3
Beav. 119; Freeman on Cotenancy, 2d ed., secs. 185, 198;
Washburn on Easements and Servitudes, 4th ed., 46;
Goddard on Easements, 93, 94; 3 Kent's Com., 13th
ed., 436.)

*Mastick, Belcher & Mastick,* for Laura Pfeiffer.

*Jarboe, Harrison & Goodfellow, amici curiæ.*

*Flournoy & Mhoon,* for Respondents.

As in California it has been decided that one tenant
in common can convey a specific part of the common
land, it necessarily follows that he can convey or reserve
any less interest, as, for example, an easement. (*Stark* v.
*Barrett*, 15 Cal. 370; *Gates* v. *Salmon*, 35 Cal. 588; 95
Am. Dec. 139; *Sutter* v. *San Francisco*, 36 Cal. 112; *Law-
rence* v. *Ballou*, 37 Cal. 518.)

McFARLAND, J.—This is an action to quiet title to a
certain piece of land, to enjoin defendant from diverting
any water from said land, and to recover damages for
past diversion of such water. The action was tried in
the court below, without a jury, and judgment went for
defendant. Plaintiff appeals from the judgment, and
from an order denying her motion for a new trial.

The material facts in the case, omitting certain de-
raignments of title and other matters which need not be
recited here, are these:—

1. In 1805, plaintiff became the owner in fee of a cer-
tain undivided interest in " two thousand nine hundred
acres, or thereabouts," of mountain or hill land in Ala-
meda County, California. This land was a part of the
rancho San Antonio, granted by the Mexican government
in 1823 to Luis Peralta, and confirmed to his sons and

grantees by a patent of the United States government, dated February 10, 1877. Plaintiff continued to be the owner of said undivided interest until the year 1875, when a certain partition suit, entitled *Le Roy* v. *Gwinn et al.*, was instituted in the proper district court for the purpose of terminating the co-tenancy of the various owners of undivided interests in said land, and apportioning it among said owners in severalty. A judgment was rendered in said partition suit on the 21st of August, 1875, by which the particular land described in the complaint in this present action, and which is designated as "plot O," was set off in severalty to the plaintiff. She was put into possession of said plot O by the sheriff, and has been in possession ever since, except so far as her possession has been interrupted by defendant, as hereinafter stated.

2. On August 10, 1864, Owen Simmons and wife, being also the owners in fee of an undivided interest in said two thousand nine hundred acres of land, conveyed the same to the College of California, a corporation, who remained the owner thereof until June 1, 1870, when it conveyed said undivided interest to the defendant herein, the Regents of the University of California. At the time of said conveyance by Simmons and wife to the College of California, said Simmons was in the actual occupancy of that part of said land described in the complaint, which contains the springs of water about which this litigation has arisen, although he was only an owner, as tenant in common with others, of an undivided interest in the whole tract of two thousand nine hundred acres, which fact was well known to the college. After the conveyance to the college, the latter remained in occupancy of said piece of land until its conveyance to the defendant on June 1, 1870. This particular part of the land was wet and springy. It has several springs on it, which usually sunk into the ground within short distances from their sources. In 1866 the college com-

menced to clear out two of said springs; and within a year or two, by excavations, etc., it developed a stream of water, which by means of flumes, pipes, reservoirs, etc., it converted and conveyed entirely away from said undivided lands onto other lands held by said college in severalty. The college, and its successor, the defendant, continued to so divert and convey said water from 1866 until after the judgment in said partition suit in 1875, without any interference or complaint by any of their co-tenants. In developing this water, and in erecting works for its diversion, the college and the defendant expended about seventeen thousand dollars. After the judgment in partition, which set off this piece of land in severalty to plaintiff, she protested against any further diversion of the water by defendant, demanded payment for it, etc. She commenced this action within a day of the expiration of five years after the issuance of the patent.

3. On the twenty-eighth day of November, 1870, the defendant executed to Mary E. Brayton a conveyance of all its interest in said undivided tract of two thousand nine hundred acres of mountain land. Said conveyance also describes three other tracts of land not involved in this controversy, and has in it the following clause: "Excepting and reserving out of and from this conveyance, and out of the premises firstly, secondly, and fourthly above described, the right of the water arising upon or flowing across the same, so far as it shall be needed for the University of California, and the right to enter upon said land for the purpose of constructing and laying the necessary pipes, and making the same available, the same to be exercised in such manner as not to interfere with the use and occupation of the land for cultivation, and to do no damage to the crops thereon." Mary E. Brayton afterwards conveyed to H. G. Livermore, who was made a party to said partition suit, and had set off to him a certain part of said two thousand nine hundred acres, designated as "plot H." The word "fourthly" in

said clause of reservation refers to said undivided interest in said two thousand nine hundred acres.

. 4. There is another fact which must be here stated, because, while it has no direct reference to the land or water described in the complaint, it has a bearing on the question, Who were necessary parties to the partition suit ? Z. B. Heywood, being the owner of an undivided interest in said tract of two thousand nine hundred acres, and having entered upon the occupancy of a certain part of it called "Ramsey ranch," on the fourth day of September, 1860, executed a deed to the president and board of trustees of the College of California, by which he gives, grants, bargains, sells, and quitclaims to them "the exclusive right in perpetuity to enter upon my land known as the 'Ramsey ranch,' being a portion of the Rancho San Antonio in the county of Alameda, California, and thereon to collect and take away, with the reservations hereinafter mentioned, the waters of the various springs which open into and along the gulch and ravine, and its branches that debouch at or near the point where the present road crosses the boundary line between sections 83 and 84, as laid down in Kellersberger's map; and also of the said springs above said ravine that rise to the southward of and run past and near my present farm-house, and for the purposes aforesaid to take, hold, use, occupy, and clear up so much of said land as may be proper and necessary for collecting said waters in basins or reservoirs, or for flooding by dams, and for canals and conduits, and the laying of pipes; and the right at all times to enter upon so much of said lands as their convenience may require for all the purposes aforesaid, and for repairs or viewing the same, and the right to protect said waters from waste or damage by such works, and in such manner as they may judge best." The reservations referred to are not material. Heywood remained owner of said undivided interest until the commencement of said partition suit; was made

a party thereto; and had set off to him in severalty a part of said two thousand nine hundred acres, designated as "plot P," said plot P including the said Ramsey ranch.   On the twenty-sixth day of November, 1869, the said president and board of trustees of the College of California conveyed to "the state of California, represented by the regents of the University of California," all the rights and property (if any) which were conveyed to the former by said deed of September 4, 1860, executed by said Heywood as aforesaid.   Neither the state of California nor the defendant was made a party to said partition suit.

5. The defendant continued to divert water from said plot O, from the time plaintiff became several owner thereof until the trial of this present action, and to convey the same to its university lands, which never were part of said two thousand nine hundred acres of mountain land.   The court below finds that for three years and ten months immediately preceding the trial the defendant so diverted and used ten thousand gallons per day, in addition to water sold by it to others, for which it received $4,804; but it is not found how much plaintiff was injured by such diversion.   It appears from the findings that defendant has taken the water from only two springs on said land, and that there are several other springs on the land, which seem not to have been developed or used in any way by plaintiff.

Upon these facts, the court below rendered judgment for defendant, upon the sole ground—as stated in the first finding—that by the reservation in said deed from the defendant to Mary E. Brayton, and by said deed of the College of California to the state of California, represented by the regents of the University of California, conveying to the latter the rights conveyed to the former by said Z. B. Heywood as aforesaid, the defendant and the state of California acquired and retained such interests in said two thousand nine hundred acres of land

as made them necessary parties to said. suit for partition; and that not having been made such parties, the judgment in said suit setting off such plot O in severalty to plaintiff was and is void as against the defendant.

In taking this view of the case, we think that the court below erred. It is not necessary to discuss the question whether if respondent had been the sole owner of the land at the time of its deed to Mrs. Brayton, the reservation would have left in respondent a mere personal privilege or right in gross, or an interest in the land itself capable of partition. At the time of the execution of said deed respondent was the owner of only an undivided interest in the land as tenant in common with the appellant and others; and as such tenant in common, it had no power to convey to a stranger, or to reserve to itself, after parting with the fee, the right to divert water entirely away from said land. A tenant in common cannot create an easement or servitude upon the common land. In Goddard on the Law of Easements, on pages 93 and 94, the result of the authorities on the subject is correctly stated as follows: " So the grantor must be the *sole* owner of the fee. One joint owner or tenant in common cannot create an easement in the common estate as against his co-tenant,—though probably he would be himself estopped to dispute a grant thus made. For the same reason, one tenant in common cannot, when conveying his own interest· in the common property, create *by reservation* a personal and separate easement over the same for the benefit of his adjoining separate property." In *Boston F. Co.* v. *Condit*, 19 N. J. Eq. 394, it was held that " a grantee of the right to dig ores from one tenant in common cannot call for a partition of the premises." (See also 3 Kent's Com., 11th ed., 554; Freeman on Cotenancy, sec. 198; *Adam* v. *Briggs Iron Co.*, 7 Cush. 361; *Marshall* v. *Trumbull*, 28 Conn. 183; 73 Am. Dec. 667.)

We do not understand counsel for respondent as denying this to be the rule clearly established by the general authorities, and they cite no cases to the contrary.   But they argue that logically the rule ought to be different in this state on account of certain decisions made by this court (about another matter), in *Stark* v. *Barrett*, 15 Cal. 361, *Gates* v. *Salmon*, 35 Cal. 576, 95 Am. Dec. 139, and some other cases which follow them.   It was quite customary at one time for individual tenants in common of large Mexican grants to convey, or to undertake to convey, their interests in particular parts of the common land by metes and bounds, called "special locations"; and the decisions last above referred to simply held: 1. That the grants of such special locations were good as against naked trespassers; and 2. That they were not absolutely void as against the co-tenants of the grantor, but were taken subject to the co-tenants' right of partition of the whole tract, and might be lost to the grantee when such partition took place.   These decisions are admitted to have been in conflict with many authorities of high standing, and were based, no doubt, to some extent, on equitable considerations growing out of particular circumstances; and they should not be pushed further than the limits of their express terms.   But there were no questions about *easements* in those cases.   Whatever interest the grantor undertook to convey was *all* his interest or estate in the *whole* land described in the conveyance.   There was no attempt to create or reserve a right to dig for minerals in the land, or to cut wood on it, or to take water from it, or to have a way over it,— no attempt to divide up the very *body* of the land and distribute it around.   There is nothing, therefore, in those decisions that alters the well-established rule as above stated, which determines the main point in the case at bar.

Of course, the deed from Heywood to the College of California, and the deed from the latter to the respond-

ent or the state of California, are upon the same footing with the "reservation" in the deed from respondent to Brayton. Neither the respondent nor the state of California had an estate or interest in the land, and neither was a necessary party to the suit for partition.

The defenses founded on appropriation, acquiescence, estoppel, and the statute of limitations were not maintained. The findings on those issues, as we understand it, were all in favor of appellant, and respondent has not appealed.

Our conclusion is, that upon the findings judgment should have been rendered for appellant according to the prayer of her complaint, except as to damages, about which there is no finding. But as appellant now waives all claims for damages, there appears to be no necessity for a new trial. The judgment is therefore reversed; and the superior court is directed to enter judgment for plaintiff according to the prayer of the complaint, without damages.

Searls, C. J., Thornton, J., McKinstry, J., and Sharpstein, J., concurred.