[S. F. No. 10235. In Bank.—September 7, 1923.]

## SIMON KAFKA et al., Appellants, v. ORLANDO E. BOZIO, Respondent.

[1] NUISANCES — OVERHANGING BUILDINGS — NEGLIGENCE. — The maintenance by an owner of a building which overhangs the premises of another is a violation of the latter's rights which amounts in law to a nuisance, regardless of whether or not it is due to any negligent act or omission.

[2] ID.—STATUTES OF LIMITATIONS.—Where parties have at all times been seised and in possession of certain premises, subject only to the encroachment of an adjoining building into the air space above a small portion thereof, this is not sufficient to interrupt the continuity of their possession, and sections 318, 319, and 320 of the Code of Civil Procedure are inapplicable to an action to abate the nuisance.

[3] ID.—TRESPASS — CONTINUING NUISANCES — SUCCESSIVE CAUSES OF ACTIONS—STATUTE OF LIMITATIONS.—In such a case, where the encroachment is not upon the land, but upon the space above the land, there is no trespass, but a nuisance, every continuance of which constitutes a new nuisance for which successive actions will lie, and the statute of limitations cannot be a complete bar in any such case where the encroachment progressively increases up to the time of commencing the action.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge. Reversed.

The facts are stated in the opinion of the court.

Henry B. Lister for Appellants.

P. A. Bergerot and A. P. Dessouslavy for Respondent.

MYERS, J.—Plaintiffs appeal herein from a judgment in favor of the defendant in an action to abate a nuisance and for damages. Upon this appeal appellants waive all claims for damages and ask that the action be regarded as solely one for the abatement of a nuisance. Plaintiffs and defendant are owners of adjoining lots in the city of San Francisco, the south line of defendant's lot forming a portion of the north line of plaintiffs' lot. Prior to the

earthquake and fire of 1906 defendant had erected a five-story building upon his lot upon what is known as a scow foundation, consisting of a scow or raft constructed of heavy timbers and concrete, covering the entire lot, around the borders of which was constructed a concrete wall seventeen inches thick, which served as the foundation wall of the building. The building was destroyed by the fire of 1906, leaving the scow and the concrete foundation walls intact. It was then discovered that the entire scow had moved in a southerly direction so that it and defendant's south wall projected into plaintiffs' premises a distance varying from ten to fourteen inches. Plaintiffs then demanded that defendant remove the wall from plaintiff's premises and defendant refused, saying that plaintiffs could have it, that he figured that it was more economical than to tear it out. In 1908 defendant proceeded to erect a new building upon his original foundation. The new building of four stories was erected entirely within the boundaries of his own lot, and to do this defendant constructed an additional wall along the north side of the original south wall, which was sealed to the original wall, making the same twenty-five inches in thickness which was, roughly speaking, half on plaintiffs' lot and half upon defendant's. Shortly thereafter plaintiffs erected a four-story building upon their lot, which was erected mainly upon a pile foundation, but in part upon walls resting upon the original soil, and where it adjoined defendant's lot was rested upon that portion of defendant's original wall which had encroached upon plaintiffs' premises. As originally constructed both buildings were straight and plumb and within the lines of the respective lots. The northerly portion of the scow foundation upon which defendant's building was constructed rested upon solid ground, but the southerly portion thereof was upon soft filled ground where there had formerly been a creek-bed. As the two buildings were originally constructed there was a space of about two inches between them. In December, 1914, it was discovered that the wall along the boundary line between the two lots had sunk, with a resultant tipping of defendant's building toward the south, so that the upper portions thereof encroached about two inches upon plaintiffs' lot, pressing against their building, warping and distorting same so that plate-glass windows therein were broken, plaster was cracked, doors and windows jammed, plumbing con-

nections leaked, etc. Plaintiffs called the situation to defendant's attention at that time, but nothing was done about it. The sinking of the foundation wall has continued and the encroachment of defendant's building upon plaintiffs' lot has progressively increased since that time, although the added encroachment during the past three or four years has been but a fraction of an inch. Plaintiffs, being desirous of straightening and repairing their building, and unable to do so under existing conditions, demanded of defendant that he straighten his own building and abate the nuisance caused by its overhanging, and, upon defendant's refusal, brought this action.

The theory upon which the trial court rendered judgment for the defendant appears to have been that the sinking of the foundation wall and the resultant encroachment of defendant's building upon plaintiffs' premises were caused, or at least contributed to, by the act of the plaintiffs in placing the added weight of a portion of their own building upon that portion of the wall which was within their lot, and that because of this circumstance they should be debarred of recovery. Plaintiffs, in their complaint, alleged that the encroachment of defendant's building was due to the negligent manner in which it had been constructed, to which defendant in his answer replied, in effect, that it was due to the uegligence of the plaintiffs in superadding the weight of their building to the common wall. The parties thus confused the issues herein by importing into the case questions of negligence and contributory negligence, which are wholly irrelevant to the action in so far as it seeks an abatement of the nuisance. **[1]** There may be cases wherein the question whether the maintenance of a given condition amounts to a nuisance depends upon whether or not it is due to negligence, but the maintenance by an owner of a building which overhangs the premises of another is a violation of the latter's rights which amounts in law to a nuisance, regardless of whether or not it is due to any negligent act or omission. (*Meyer* v. *Metzler*, 51 Cal. 142; 29 Cyc. 1155; 1 C. J. 1208.) The act of the plaintiffs in building upon that portion of the wall which was within their premises does not make the case one for the application of the rule *volenti non fit injuria* as applied in the case of *Churchill* v. *Baumann,* 95 Cal. 541 [30 Pac. 770]. That portion of the wall having been expressly abandoned by defendant thereafter constituted a portion of

plaintiffs' premises and they were well within their rights in making use of it. This consideration is emphasized by the fact, shown in evidence, that the presence of the wall in that location rendered it impossible for plaintiffs to construct a pile foundation under that portion of their building. Under these circumstances plaintiffs cannot be held, by making use of the wall, to have consented that defendant's building should encroach upon their premises, even though such encroachment may have been due in part to their use of the wall. "But when no right has been violated, it cannot by any process of reasoning be established that there is a legal injury or damage." (*Lamb* v. *Reclamation Dist.*, 73 Cal., at p. 129 [2 Am. St. Rep. 775, 14 Pac. 627], quoting from Wood on Nuisances.) Plaintiffs' use of the wall under such circumstances was in no sense a legal wrong or a violation of any duty which they owed to defendant and can form no predicate for an estoppel as to them. We do not mean to be understood as holding that the evidence herein would not justify a conclusion that plaintiffs were negligent in superadding the weight of their own building to the wall under the circumstances in evidence. Neither are we to be understood as deciding that if such negligence on the part of plaintiffs approximately contributed to cause the tipping of defendant's building and the resultant injuries to plaintiffs' building, it would not be a defense and bar to plaintiffs' action for damages therefor. That question need not be here determined for the reason that plaintiffs concede upon this appeal the correctness of that portion of the judgment of the court below which denied their claim for damages. But the fact that plaintiffs were guilty of contributory negligence, if it be a fact, could not confer upon defendant a right to the continued maintenance of his own building in such condition that it obstructs and interferes with the free use and enjoyment by plaintiffs of their own property. The trial court found as a fact that the erection of plaintiffs' building upon the common wall "has caused, accelerated and largely contributed to the settlement of said common wall and the resulting leaning of said buildings toward each other and is the cause of any damage to plaintiffs' said building . . . " This finding would seem to be contrary to the evidence in view of the admitted fact that there is a space of from one and a half to two inches between the top of the wall and the bottom of the mudsills of plaintiffs' building, thus indicating

that no portion of plaintiffs' building is at present resting upon the wall, and that the wall has continued to sink since it was entirely relieved from the weight of plaintiffs' building. However, it is not necessary to determine this question as, for the reasons indicated, we deem it immaterial.

[2] The plaintiff pleaded, and the trial court found herein, that plaintiffs' cause of action is barred by the provisions of sections 318, 319, 320, 336, subdivision 2, sections 339, 338, subdivision 2, and section 343 of the Code of Civil Procedure. Sections 318, 319, and 320 are inapplicable because the plaintiffs have at all times been seised and in possession of the premises, subject only to the encroachment of defendant's building into the air space above a small portion thereof. This was not legally sufficient to interrupt the continuity of plaintiffs' possession. (*Gillespie* v. *Jones*, 47 Cal. 259, 263, 264.) Section 336, subdivision 2, does not apply because this is in no sense an action for mesne profits. The applicability of section 339 or of either subdivision thereof is not apparent. It is the theory of respondent, presumably adopted by the trial court, that this is an action for trespass upon real property and, therefore, governed by section 338, subdivision 2, the limitation being three years.

[3] The wrong here complained of was an encroachment, not upon plaintiffs' land, but upon the space above the land, and, therefore, was not a trespass but a nuisance. The distinction is pointed out in Wood on Nuisances, third edition, at page 33. The action herein is not an action at law to recover damages for a trespass, but a suit in equity to abate a nuisance, and, as originally instituted, incidentally to recover damages therefor. (Code Civ. Proc., sec. 731; *Meek* v. *DeLatour*, 2 Cal. App. 261, 263 [83 Pac. 300], and cases cited.) Where a trespass consists of a physical entry upon the lands of another and taking possession thereof under such circumstances as to indicate an intention that the trespass shall be permanent, the law may regard the wrong done in such case as complete at the time of the entry and allow recovery in a single action of all damages resulting therefrom, including prospective as well as past damages. This is particularly true where the entry and taking possession are for a public use, in connection with which the trespasser might have exercised the right of eminent domain, but omitted to do so. (*Robinson* v. *Southern California Ry. Co.,* 129 Cal. 8 [61 Pac. 947]; *Williams* v. *Southern Pac. Co.,*

150 Cal. 624 [89 Pac. 599].)    In such a case the statute of
limitations runs from the time of the original entry.    But
where the wrong consists of an encroachment which was not
willful but unintentional, and which is abatable, the law
does not presume that such an encroachment will be perma-
nently maintained.    The maintenance of such an encroach-
ment is a continuing trespass or nuisance (1 C. J. 1207, 1208;
*Langfeldt* v. *McGrath,* 33 Ill. App. 158; *Milton* v. *Puffer,*
207 Mass. 416 [32 L. R. A. (N. S.) 1010, and note, 93 N. E.
634), and every continuance thereof amounts to a new nui-
sance for which successive actions will lie.    The instant case
is not governed by the rules quoted in respondent's brief as
applicable to a permanent trespass or nuisance, but rather
by the following rules from the same authorities which apply
to a continuing nuisance: "The rule in reference to acts
amounting to a nuisance is that every continuance is a new
nuisance for which a fresh action will lie . . . "    (2 Wood
on Nuisances, 3d ed., p. 1308).    "Nuisances consisting of
acts done or particular uses of property may be properly
termed continuing when they are of such a character that
they may continue indefinitely, or, on the other hand, may
be discontinued at any time."    (29 Cyc. 1154.)    "The gen-
eral rule is that every continuance of a nuisance is a new
nuisance for which the person injured may bring successive
actions for damages until the nuisance is abated. . . . These
principles, however, are applicable only to nuisances which
are abatable, or productive of temporary injury only, or
which may not result in further injury.    They are based
upon the theory that the law will presume neither the con-
tinuance of wrongdoing nor the infliction of an injury which
is contingent."    (21 Am. & Eng. Ency. of Law, 2d ed., 730,
732.)    "Where continuing or recurring injury results from
a wrongful act or from a condition wrongfully created and
maintained, such as a continuing nuisance or trespass, there
is not only a cause of action for the original wrong arising
when the wrong is committed, but separate and successive
causes of actions, for the consequential damages arise as and
when such damages are from time to time sustained; and
therefore so long as the cause of the injury exists and the
damages continue to occur, plaintiff is not barred of a re-
covery for such damages as have accrued within the statu-
tory period beyond the action, although a cause of action
based solely on the original wrong may be barred."    (25

Cyc. 1138.) "Successive actions may be brought if the nuisance continues by the continuous fault of the defendant. In the first action the question whether the acts complained of constitute a nuisance or not is to be determined; and where there is no ground for imputing any wanton or intentional wrong the damages are confined to the actual injury from the nuisance and its continuance to the date of the writ. If it continues afterwards, the damages resulting therefrom can only be recovered by a new suit, and they may be so recovered, for every continuance of the nuisance is a new nuisance." (4 Sutherland on Damages, 4th ed., p. 3849.) "In all cases of doubt respecting the permanency of the injury, courts are inclined to favor the right to successive actions. Otherwise the effect would be to give the defendant, because of his wrongful act, the right to continue the wrong; a right equivalent to an easement. A right to land cannot thus be acquired." (Id., p. 3854.) "The apparent discrepancy in the American cases on this subject may perhaps be reduced by supposing that where the nuisance consists of a structure of a permanent nature and intended by the defendant to be so, or of a use or invasion of the plaintiff's property, or a deprivation of some benefit appurtenant to it for an indefinitely long period in the future, the injured party has an option to complain of it as a permanent injury and recover damages for the whole time, estimating its duration according to the defendant's purpose in creating or continuing it; or to treat it as a temporary wrong to be compensated for while it continues . . . " (Id., p. 3874.) It is clear that the plaintiff herein has elected to treat the nuisance, not as a permanent injury to be fully compensated in damages, but as a temporary wrong to be abated.

Of course, the statute of limitations could not be a complete bar in any case where the encroachment had progressively increased up to the time of commencing the action. Respondent contends that the trial court found the fact against this contention of plaintiffs. The finding is "that it is not true that, *by reason of the negligent or imperfect construction of defendant's building,* the south wall thereof . . . daily or continually further encroaches thereon." (Italics added.) This finding does not cover the issue. Being limited by the italicized phrase, it is in the nature of a negative pregnant.

Defendant pleaded that he had gained by prescription the right to overhang plaintiffs' premises, and the trial court made no finding thereon. The burden was upon defendant to prove the facts supporting this defense. This action was commenced April 9, 1919, and there is no evidence that any encroachment occurred prior to December, 1914. If an adjoining land owner could successfully set up the defense of the statute of limitations, or of title by prescription, as a complete bar to an action for relief against a constantly increasing encroachment, he might thus eventually gain the whole of his neighbor's premises.

The judgment is reversed and remanded for a retrial as to the issues involved in the portion of the action which seeks an abatement of the nuisance.

Kerrigan, J., Seawell, J., Waste, J., Lennon, J., Wilbur, C. J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.