[Civ. No. 3858. Third Appellate District.—January 16, 1930.]

ROBERT SARINA, Respondent, v. MATHIAS J.
PEDROTTI et al., Appellants.

Thomas P. Boyd, George W. Howe and Francis L. Ashe for Appellants.

Puter & Quinn for Respondent.

FINCH, P. J.—For many years prior to the transactions herein mentioned the defendants were the owners of a dairy ranch of something over 500 acres in Del Norte County, which was held under lease by the plaintiff and on which he kept a dairy herd of more than 100 cows. October 4, 1926, a new lease of the premises was executed by the parties for a "term beginning on the first day of December, 1926, and ending on the 30th day of November, 1927."

The complaint contains three counts. In the first it is alleged that the defendants evicted the plaintiff from 160 acres of the land to his damage in the sum of $5,000. In the second it is alleged that the defendants, "during the winter of 1926-27, proposed to plaintiff that said plaintiff

and defendants should sell out together, that is get a buyer for all the land and personal property together and in that way a better price could be secured for both the real and personal property than if the personal property were sold separate and apart from the real property and as an inducement and as a consideration for a combined sale of said real and personal property the said defendants proposed to plaintiff that plaintiff plow up and seed 110 acres and that they· would furnish and pay for the seed in order that said dairy ranch would be in a better shape and condition for dairy purposes and bring about a sale more easily and also render easier a sale of the personal property, . . . and said defendants promised at said time and prior thereto promised plaintiff not to sell said real property unless a sale of plaintiff's personal property was made at the same time; that relying upon said promises of defendants said plaintiff did plow up 110 acres of said land and did seed the same to grass as requested by said defendants and all of said. seeding was done in the months of March and April, 1927, . . . that without notifying or consulting plaintiff said defendants did on or about the first day of September, 1927, enter into an agreement for sale of said premises with one John L. Childs and . . . did then and there abandon all intention or attempt. of endeavoring to make a combined sale of the personal property belonging to plaintiff and the real property belonging to defendants. . . . That said personal property could have been sold much more advantageously as a whole and in combination with the sale of said premises than if said personal property had to be sold and removed from said premises and that by reason of the failure of said defendants to carry out their said promise concerning a combined sale of said premises and said personal property as aforesaid, plaintiff has been damaged in the sum of $7,500.'' The third count is for the reasonable value of plowing and seeding said 110 acres of land, alleged to be the sum of $1500.

The jury returned a verdict for the plaintiff· against all the defendants in the sum of $5,000, the respective amounts awarded on the several counts not being specified. Judgment was entered in accordance with the verdict and the defendants have appealed.

█ By an instrument dated October 5, 1927, the defendants leased the lands involved in the action to John L. Childs for "the term of four years from and after the first day of December, 1927," at the rental of $3,750 a year, payable semi-annually in advance, with the option to purchase the land for the sum of $75,000, said option to "continue during the life of this lease," and the further option, "during the term of this lease only," to purchase "lots 9, 10, and 11" of the leased lands for $18,000. The evidence shows without conflict that the lease was not delivered to Childs until after the expiration of the plaintiff's term, but it is probable that the terms of the lease were agreed upon prior to its execution, for in the early part of September, 1927, Childs leased two parcels of about eighty acres each to Manuel Mellow and W. Ammons, respectively, and placed them in possession. Childs testified that he placed these men in possession with the plaintiff's consent; that early in July, 1927, he and the plaintiff came to an understanding that the former would endeavor to acquire the land from the defendants and that he and the plaintiff would cooperate in the sale thereof and divide the profits equally between them; that "it was understood between these people (defendants) and myself that I had nothing to do with that place until the first day of December," but that the plaintiff co-operated with him in placing Mellow and Ammons on the land. The plaintiff contradicted a large part of Childs' testimony, but there is no evidence tending to show that the defendants were in any manner instrumental in putting Mellow or Ammons in possession or in interfering with the plaintiff's possession or use of the lands. The defendants did not convey to Childs any part of or interest in the estate which they had theretofore conveyed to the plaintiff by their lease to him. Childs was as much a stranger to such interest as if he had received no conveyance from the defendants. If he and his grantees entered into possession prior to December 1, 1927, without the plaintiff's consent they were mere trespassers. █ The landlord's covenant of quiet enjoyment and possession of leased premises "is equivalent to a stipulation that the lessee shall not be rightfully disturbed in his possession during the term, not that he shall not be disturbed at all. The lessor is not responsible under the covenant for the acts of a mere tres-

passer, though the effect of the trespasser's acts may be to deprive the lessee of the benefits of the lease, the latter's remedy being against the trespasser, not against the lessor." (15 Cal. Jur. 635.)

 In support of the second count of the complaint the plaintiff testified that he received a letter from the defendant Pedrotti and another from the defendant Winfield Strain, neither of which letters was produced. On the ground that he was unable to find the letters the plaintiff testified in relation to their receipt and contents as follows: "I received a letter from Mr. Pedrotti sometime after the first of the year (1927). . . . He told me in the letter that he wanted me to send him price for anything I own there. He said he had a buyer. He want my creamery statement for 1926. So I sent him the creamery statement. . . . About a month after that I got a letter from Winfield Strain. He told me he got a letter from Mr. Pedrotti and he said the price is all right that I made on the cattle and that they be up inside of two weeks and buy what I had. . . . He told me to keep the place up in order to get better price, so they get better price for the sale of the place, they pay for the seeding and everything else that I do. . . . Well, I started in to seed and put the ranch in good shape so when they come up it be in shape; it would be seeded anyway and get better price for it. . . . Contents of the letter was they want to know when the cows was coming in and they was willing to pay for seeding and have me put the place in shape so we get better price for the sale; for the ranch and cattle. . . . I went to work and seeded about 100 acres. . . . I seed two fields with rye grass and another field with clover." Another witness for the plaintiff testified that he saw and read a letter from Winfield Strain to the plaintiff in which Strain "wrote to him about going to keep up the place and he was going to fetch some parties up and buy him out, and the price was all right. . . . Went on to tell him to keep the place up; he had some buyers and was going to fetch them up. . . . He was going to buy him out and the price was all right." Both Strain and Pedrotti testified that they did not send the plaintiff any letter of the character described by him. There is no evidence to show that either William Strain or Pedrotti authorized Winfield Strain to make any agreement in their behalf. The

defendants owned the land as tenants in common. ■
"A tenant in common has no power to bind any of his co-
tenants by contract." (7 Cal. Jur. 358.) Taking the testi-
mony of the plaintiff and his witnesses as true, it is wholly
insufficient to prove an agreement, even between the plain-
tiff and Winfield Strain, to sell the land and the personal
property together, as alleged in the second count of the com-
plaint. At most, such evidence merely shows that the par-
ties had under consideration a prospect or possible oppor-
tunity of making such a sale. The evidence does not show
that there was any agreement as to the price at which the
land was to be sold or the terms of the proposed sale of
either the land or the personal property. ■ "It is well
settled that no action will lie to enforce the performance of
a contract, or to recover damages for its breach, unless it be
complete and certain; and the rule applies as well to price
as to subject matter and parties." (*Talmadge* v. *Arrowhead
R. Co.*, 101 Cal. 367, 371 [35 Pac. 1000, 1002].) ■ "An
agreement that parties will, in the future, make such con-
tract as they may then agree upon amounts to nothing.
An agreement to enter into negotiations and agree upon the
terms of a contract, if they can, cannot be made the basis
of a cause of action." (*Dillingham* v. *Dahlgren*, 52 Cal.
App. 322, 330 [198 Pac. 832, 835].)

■ The evidence relating to the third count is conflict-
ing and it cannot be held as a matter of law that the plain-
tiff is not entitled to recover judgment in some amount from
Winfield Strain for plowing and seeding a part of the land,
but it cannot be ascertained from the record what sum, if
any, the jury allowed therefor. There is no evidence tend-
ing to show that the other defendants are liable for such
plowing and sowing.

The court erred in some of the instructions to the jury
and in refusing to give some of the instructions requested
by the defendants, but such errors are sufficiently indicated
by what has already been said.

The judgment is reversed.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the
District Court of Appeal on February 15, 1930, and a peti-

tion by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 17, 1930.

All the Justices concurred.