[Civ. No. 8302. First Appellate District, Division One.—June 11, 1932.]

JOSEPH OBERWISE, Appellant, v. JOE POULOS et al., Respondents.

Porter C. Blackburn for Appellant.

Hugh E. MacBeth for Respondents.

DOOLING, J., *pro tem.*—This is an appeal by plaintiff from a judgment denying him injunctive relief by enjoining the defendants Carey Smith and Lillie B. Smith, his wife, who are persons of negro blood, from occupying a certain lot of land of which they are the owners, and which they acquired from the defendants Poulos. The action is based upon ten separate instruments, all of which are in identical language and read as follows:

"Covenants of Restriction.

"This Agreement, made and entered into this —— day of October, 1925.

"Witnesseth, that in consideration of the mutual covenants herein contained and for the benefit of the land and premises hereinafter described.

"We, the undersigned owners of real estate in the West Adams and Western Avenue Tract and the A. H. Carey's West 29th Street Tract, both situate in the City of Los Angeles, State of California, agree to bind ourselves until January first, 1950, to the following restrictions:

"That we will not sell, convey, assign, let or sub-let unto or permit the use or occupancy of, by any person or persons other than of the Caucasion race, any of our land or property in the above named tracts;

"That this restriction shall be incorporated in all deeds of transfer of said property and shall be binding upon each party hereto, their assignees, transferees and successors in interest in said property until January first, 1950, and

"It is further understood and agreed that the foregoing restrictions, obligations and agreements shall be binding

only upon the securing of one hundred forty (140) signatures and agreements hereto, exclusive of the lots or parcels of land fronting or facing on Western Avenue."

To no single instrument were there 140 signatures attached, but the aggregate number of signatures affixed to the ten separate instruments was found to be 172. The plaintiff was a signer of one instrument, and defendant Joe Poulos was a signer of another. The court found that the ten separate instruments did not in fact constitute a single contract. However, for the purposes of this opinion, we will concede, without deciding, that the ten separate instruments are to be given the same effect as if all of the signatures had been affixed to a single document.

The trial court found: "That the alleged restriction was attempted to be created or established under a condition precedent; that the condition precedent was the due and lawful signatures by the lawful owners of properties situated in said two tracts, to the number of one hundred forty such owners, all residents within or owning land lying within one or the other of said tracts; that 140 alleged owners did not duly and regularly sign the instruments alleged to create the restriction claimed; that 67 or more of the total number of signatures in and on said instruments failed either to identify the property or land alleged to be owned by said signers and to be bound by the restriction contained in said agreement, or that owners' names were signed by persons without owners' authority, or that persons signed their own names who had no interest in the property, and in many instances where property was held in joint tenancy all of the cotenants did not sign, or where property is held as community property by husband and wife only one of the spouses signed the purported agreement."

In so far as the finding is that the securing of the signatures of 140 property owners in the two tracts in question was a condition precedent to the covenants coming into force, there can be no question of its correctness. The instruments themselves recite: "We, *the undersigned owners of real estate* in the West Adams and Western Avenue Tract and the A. H. Carey's West 29th Street Tract . . . agree to bind ourselves." (Italics ours.) The contract too plainly contemplates that it is to be executed by property owners in the two tracts to admit of any doubt that the 140 sig-

natures required as a condition precedent must be signatures of land owners in one or the other of the tracts named.

However, of the 67 signatures found insufficient by the court, 30 were cases where land within one of the tracts was held in joint tenancy and one or more of the joint tenants did not sign; 9 were cases where land within one of the tracts was held by tenancy in common and one or more of the tenants in common did not sign; and in one instance the land was community property and only the husband signed. Appellant contends that the court erred in excluding these 40 signatures. As to the other 27 of the 67 signatures excluded no point is made by appellant.

We need give no further attention to the single instance in which community property was involved because even if the husband's signature was improperly excluded the agreement would still fall short of the 140 signatures required, unless the court erred in excluding the signatures of joint tenants and tenants in common in the 39 cases where all of the joint or common owners did not sign the agreement.

It was the theory of the trial court that the 140 ''signatures and agreements'' required by the contract meant 140 signatures and agreements which would result in the absolute exclusion from occupancy by persons not of the Caucasian race of the parcels of land owned by the signers. It is this construction of the contract which is most strenuously attacked by appellant.

It is conceded that the portion of the agreement which attempts to bind the signers not to sell, convey, assign, let or sublet is invalid as a restraint against alienation, and the sole portion of the covenant sought to be enforced is the agreement ''that we will not . . . permit the use or occupancy of, by any person or persons other than of the Caucasian race, any of our land or property in the above named tracts''. The purpose of this agreement is obvious, to secure the lots of land in the tract against occupancy by persons other than Caucasians. The general purpose of the condition precedent is likewise obvious, the individual property owners did not want to bind themselves and their property by this restriction unless the signatures of sufficient land owners in the tracts were procured to make the restriction reasonably successful in excluding non-Caucasians from the tracts. Anything less than that would defeat the purpose of the

proposed restriction. The signers were interested not in securing signatures, but in securing signatures that would effectively prevent persons other than Caucasians from occupying certain lots of land. With these facts in mind, can it be reasonably supposed that it was intended that the signature of one joint tenant or tenant in common, without the signature of his cotenant, would be sufficient to satisfy the requirements of the condition precedent?

■ A contract must be construed in the light of the objects and purposes sought to be accomplished, and to effectuate those objects and purposes if possible (6 Cal. Jur., p. 256), and it must likewise if possible be given a reasonable rather than an unreasonable construction. (6 Cal. Jur., p. 271.)

■ One joint tenant or tenant in common cannot bind his cotenant by any contract which he may make relating to the common property. (*Sarina* v. *Pedrotti*, 103 Cal. App. 203 [284 Pac. 472]; 7 Cal. Jur., p. 358; 33 C. J., p. 913.) So one cotenant cannot bind his cotenants by the grant of an easement over the common property (*Pfeiffer* v. *Regents*, 74 Cal. 156 [15 Pac. 622]; *East Shore Co.* v. *Richmond Belt Ry.*, 172 Cal. 174 [155 Pac. 999]; *Waterford Irr. Dist.* v. *Turlock Irr. Dist.*, 50 Cal. App. 213 [194 Pac. 757]; 7 R. C. L., p. 884), although he may by lease or license grant to another the right to enjoy the common property in his stead to the same extent that he is entitled to enjoy it by reason of his cotenancy. (*Waterford Irr. Dist.* v. *Turlock Irr. Dist.*, *supra*; *Lee Chuck* v. *Quan Wo Chong & Co.*, 91 Cal. 593 [28 Pac. 45].) A joint tenant may likewise convey his interest to a stranger, in which event the grantee becomes a tenant in common with the other owner. (*Tilden* v. *Tilden*, 81 Cal. App. 535 [254 Pac. 310]; *Green* v. *Skinner*, 185 Cal. 435 [197 Pac. 60]; *Pepin* v. *Stricklin*, 114 Cal. App. 32 [299 Pac. 557].)

■ In view of these rules it is clear that the agreement of one joint tenant or tenant in common not to permit a person who is not of the Caucasian race to occupy the joint or common land would not be binding upon the noncontracting cotenant. The noncontracting cotenant could still by lease or license permit a non-Caucasian to use and occupy the land, or by deed could convey his interest to a non-Caucasian and thus make him a tenant in common, with the full right

of use and occupancy which every tenant in common has. It is true that the covenant of the joint tenant or tenant in common would bind him as to his undivided interest, but this would be of little value so long as his cotenant remained unbound.

In view of the plain purpose of the restrictive covenant to prevent the use and occupancy of the land in the tract by non-Caucasians and the equally plain purpose of the condition precedent that the signers were not to be bound unless enough agreements were secured to render the proposed restriction reasonably effective, we are satisfied that the construction placed upon the condition precedent by the trial court was the reasonable and proper one. It may be added that this construction comports with the rule laid down in *Werner* v. *Graham*, 181 Cal. 174, 181 [183 Pac. 945, 947], "that any provisions of an instrument creating or claimed to create such a servitude will be strictly construed, any doubt being resolved in favor of the free use of the land".

The judgment appealed from is accordingly affirmed.

Knight, Acting P. J., and Cashin, J., concurred.