[L. A. No. 18463. In Bank. Dec. 3, 1943.]

MYRTLE LEE HARDY, Appellant, v. OLIVER NOR-VILLE HARDY, Respondent.

 

Roger Marchetti and Bartlett & Kearney for Appellant.

Benjamin W. Shipman for Respondent.

TRAYNOR, J.—On April 24, 1937, plaintiff Myrtle Hardy and defendant Oliver Hardy executed a property settlement agreement providing that defendant would pay $250 weekly for the support of plaintiff unless his income fell below $1,000 a week, in which case he would pay one-quarter of the amount he received. Plaintiff contends that defendant was bound to pay $250 weekly, regardless of his actual receipts in a particular week, if his income averaged over $1,000 a week. Defendant contends that in any week in which his receipts were less than $1,000, he was bound to pay only one-quarter of the amount actually received, without regard to any average. Defendant is a motion picture actor, and his contract with his employer gave him a salary in excess of $1,000 a week for forty weeks in the year. For the other twelve weeks, described as "suspension weeks," defendant received $100 a week. The employer was free to designate as suspension weeks any twelve weeks in the year. Although defendant's annual income averaged more than $1,000 a week, he paid plaintiff for the suspension weeks only one-quarter of the amount he actually received at such times. On April 16, 1941, plaintiff commenced this action for breach of contract, praying alternatively for reformation. Defendant filed an answer denying the allegations of the complaint and moved for summary judgment in his favor. It was stipulated that if defendant correctly interpreted the contract, no issue of fact existed requiring trial. On November 4, 1941, the motion was granted and judgment was entered on March 26, 1942.

 A motion for summary judgment may not be granted except on affidavits in favor of the moving party containing facts sufficient to entitle him to judgment in his favor. (Code Civ. Proc., sec. 437c.) Defendant sets forth the pertinent portion of the contract in his affidavit. It provides that " ... for the support of first party (plaintiff), second party (de-

fendant) shall pay to first party from this day forward . . . the sum of two hundred fifty dollars ($250.00) per week BUT IN THE EVENT the weekly amount received by second party from any source whatever, either as income, salary, royalty, commission, bonuses, and/or earnings falls below one thousand dollars ($1000.00) per week, the amount which second party is required to pay to first party during the week or weeks when such income, etc. falls below $1000.00, is to be reduced to one-fourth of the amount so actually received by second party from the said source.''

This provision explicitly imposes an obligation determined by the amount actually paid to defendant each week. It refers to a decrease in ''the weekly amount *received*'' as the basis for reducing defendant's obligation, and specifies that reduced payments shall be ''one fourth of the amount *actually received.*'' Moreover, the contract provides that payments be reduced in the ''week'' or ''weeks'' in which defendant's income falls below $1,000. It could not thus take account of the possibility of a reduction in defendant's income in a single week if it envisaged payments in terms of defendant's average receipts over a longer period.

Since the language of the contract, standing alone, imposes an obligation based on defendant's actual weekly receipts, defendant's affidavit that this language accurately expresses the intention of the parties contains facts sufficient to entitle him to judgment. These facts are set forth with sufficient particularity (Code Civ. Proc., sec. 437c), for defendant stated not only that the writing was consistent with the understanding of the parties, but that the understanding was ''that when I received, for any week, the sum of $1000 or more, I paid the plaintiff $250 for such week from such receipts; when I received less than $1000 I paid her 25% of the sum received. . . .'' Moreover, defendant set forth another part of the contract which stated that the parties had examined and discussed all of the provisions of the contract with the aid of counsel and fully understood their rights and liabilities under it. In compliance with the code, these facts were set forth as of defendant's knowledge and are matters to which he could testify. (Code Civ. Proc., sec. 437c.)

It would nevertheless be the trial court's duty to deny the motion for summary judgment if the affidavit in opposition thereto established a triable issue of fact. (*Walsh v. Walsh,* 18 Cal.2d 439 [116 P.2d 62].) An affidavit, how-

ever, does not raise such an issue unless it sets forth "facts showing that the party has a good and substantial defense to the plaintiff's action, . . . or that a good cause of action exists on the merits." (Code Civ. Proc., sec. 437c.) Plaintiff contends that her affidavit, as well as a deposition taken of her testimony, contains evidence of the circumstances surrounding the execution of the contract that indicates it was intended that defendant's obligation was to be determined by his average income.

Plaintiff's affidavit sets forth that motion picture actors are paid high salaries in work weeks and low salaries in suspension weeks, that in the motion picture industry such salaries are usually described in terms of the work week level, and that the work week salary is regarded as "partly including the suspension week period." Thus, it would be said that a person who received $1,500 in work weeks and $100 in suspension weeks had a salary of $1,500 a week. In describing the negotiations between plaintiff and defendant, plaintiff's affidavit states that it was the understanding of the parties that defendant was to pay plaintiff $250 a week unless his income fell below $1,000 a week, and that no reference was made to suspension weeks. This evidence does not aid plaintiff. The absence of any reference to suspension weeks in no way suggests that they were to be regarded as work weeks. Whatever the customary view of salaries in the industry, an actor would hardly regard his receipts as $1,500 in a week when he was only paid $100. There is no indication that the parties understood that in suspension weeks "the weekly amount received by second party from any source whatever, either as income, salary, royalty, commission, bonuses, and/or earnings" meant the salary received in work weeks. Nor is there anything to suggest that the "weekly amount *received*" by defendant was to be computed in terms of his average income over a given period. In fact no period is specified for the computation of such an average. Only at the end of such a period could an average be computed, yet defendant is required to make payments each week. In the absence of any agreement as to the basis for computing the amount to be paid each week there would be no way of determining the extent of defendant's obligation if it were regarded in terms of an average income, and the contract would be void for uncertainty. (*Talmadge* v. *Arrowhead R. Co.*, 101 Cal. 367 [35 P.

1000]; *Wineburgh* v. *Gay,* 27 Cal.App. 603 [150 P. 1003]; *Sarina* v. *Pedrotti,* 103 Cal.App. 203 [284 P. 472].) Since plaintiff's affidavit therefore does not contain facts establishing that she had a cause of action, it is not sufficient to raise an issue of fact, and summary judgment was correctly entered. (See *Bank of America* v. *Oil Well Supply Co.,* 12 Cal.App.2d 265 [55 P.2d 885]; *Security-First National Bank of L. A.* v. *Cryer,* 39 Cal.App.2d 757 [104 P.2d 66].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Schauer, J., concurred.