[Civ. No. 8410. Third Dist. July 2, 1954.]

ELSIE C. L. CARBINE, Respondent, v. DORA LORAINE MEYER, Appellant.

Busick & Busick for Appellant.

Emmett J. Foley for Respondent.

SCHOTTKY, J.—Plaintiff commenced an action against defendant to restrain defendant from using a road on the land owned by plaintiff and her husband as joint tenants, and for damages for alleged trespass by defendant. Defendant filed an answer claiming that she owned an easement over plaintiff's land and also filed a cross-complaint seeking to quiet title to the claimed easement. At the conclusion of the trial before the court defendant was granted leave to file an amendment to her answer adding the defense of the statute of limitations. (Code Civ. Proc., §§ 338, subd. 2, 343.) The court ordered judgment in favor of plaintiff but did not award any damages. Findings of fact and conclusions of law were filed, and in accordance therewith judgment was entered ''That the plaintiff and cross defendant, Elsie C. L. Carbine, is entitled to and is hereby granted a judgment quieting her title to the land in question as against defendant and cross complainant Dora Loraine Meyer's claim for this particular easement, and restraining the defendant and cross-complainant from use of the same, and that said judgment decree that the purported agreement signed by the plaintiff and cross defendant's husband, John Edward Carbine, is not binding upon the plaintiff and cross defendant Elsie C. L. Carbine.''

Defendant has appealed from the judgment and makes a number of contentions for the reversal thereof. Before discussing these we shall summarize the rather unusual factual situation as shown by the record.

Respondent and her husband, John Edward Carbine, and appellant are the respective owners of adjoining parcels of land situated in El Dorado County. The land of respondent

and her husband (hereinafter called the "Carbine land") lies between appellant's parcel (hereinafter called the "Meyer land") and a county road.

In April of 1946, plaintiff's husband and a Mr. Reynolds, the then owner of the land now owned by defendant, entered into an agreement whereby plaintiff's husband gave Mr. Reynolds the right to use the road running from the county road to the defendant's land, over plaintiff's land.

At the time the easement was granted, Mr. Reynolds was appellant's former husband and it is not clear whether he was the sole owner of the Meyer land, or whether appellant had an interest in it. Appellant testified that Mr. Reynolds and she had acquired the property in 1942, during their marriage, and that in 1945, after their divorce, she invested some money in the property and the two of them then owned it in joint tenancy. In any event, Mr. Reynolds conveyed his interest in the Meyer land to appellant in 1950, and thereafter she was the sole owner.

In April, 1946, when the easement was granted, respondent and her husband had not yet obtained complete title to the Carbine land, but were purchasing it, under contract, and it was not until 1949, after the conclusion of certain other litigation (in which appellant was not involved), that respondent and her husband received a deed to the land from the executrix of the estate of Mary J. Wentz, deceased. Respondent and her husband were named as joint tenants, both in the contract of purchase from the Brays and in the deed from the executrix. It does not appear from the record that respondent ever joined in or consented to the grant or use of the easement. She testified that she never had done so, and appellant's answer admits that respondent never consented to the use of the easement by appellant.

The record does not show what use Mr. Reynolds made of the road, and the testimony is conflicting as to the use made by appellant. The latter testified that she used the road for six months, right after it was put in, and was then told by Mr. Carbine that the road had been closed. Barbed wire had been strung on posts across the road; appellant took this wire down, but four days later it was restrung. At one point in her testimony she stated that these barricades were erected in December, 1946, and at another time she said that the first barricade was erected in March, 1946—she later corrected this to July, 1946—and that the second barricade was put up about two weeks later. In any event

her testimony shows that after the road was closed for the second time she did not use it again until November or December, 1947, when she had the obstruction removed and put cattle guards in. After this second opening of the road, appellant used it for three days when it was again closed, this time by trees being felled across it, and the road remained closed until the summer of 1951, when appellant had the county road department remove the obstructions and regrade the road. This regrading was done on July 25, 1951, but it appears that the road was again closed later that summer, by chains and a felled tree. In October or November of that year respondent also had a ditch cut through the road for drainage purposes, and thereafter the road was impassable. Appellant was not living on the property at this time, but she had a tenant there. She testified that she (appellant) did use the road after the regrading, but that the tenant used it only once or twice, using another road instead. This other road also crossed the Carbine land, but it is not in issue in this appeal. Respondent denied that appellant used the road here involved for six months after it was put in, and testified, instead, that it had not been used "a month altogether" since it was built.

In December, 1947, apparently after appellant had opened the road for a second time and it had again been closed, appellant brought an action in the Superior Court in and for El Dorado County to quiet title to the easement and for injunctive relief. This action was brought against Mr. Carbine and others who were alleged to be the owners of the Carbine land, but no mention was made of respondent's interest in the land and she was not made a party to the action. The file in the action shows that on June 4, 1948, appellant obtained a decree quieting her title to the easement, enjoining interference with her use thereof, and requiring removal of the obstructions. About two months later, upon the application of appellant, the defendants in that action were ordered to show cause why they should not be punished for contempt for failure to remove the obstructions. Respondent's joint tenancy interest in the Carbine land and her objections to the easement were brought out at the hearing, apparently for the first time, and the court discharged the order to show cause, on the ground that the forced removal of the obstructions would be prejudicial to respondent's apparent rights.

Appellant testified to substantial expenses incurred by her

in improving the road and clearing away the obstructions. Among the improvements were the installation and reinstallation of cattle guards and culverts, as well as the regrading of the road in July, 1951. However, it does not appear that any of these expenditures was made prior to the second reopening of the road in November or December, 1947, at which time the road had already been closed twice and posted with "no trespassing" signs.

Appellant first contends that the instant action, which was filed on August 3, 1951, was barred by the provisions of subdivision 2 of section 338 of the Code of Civil Procedure and section 343 of the same code. It is clear that the action is one for trespass upon real property and that subdivision 2 of section 338 providing that such actions shall be commenced within three years is the applicable statute.

As hereinbefore noted, there is evidence that appellant started to use the road in 1946, although the extent of her use that year is in dispute. It appears, however, that after the initial barricade was put up, appellant used the road for only four days in 1946, for three days in 1947, and made no further use of it until July, 1951, when the acts of trespass, of which respondent complains, occurred. The original complaint herein was filed in August, 1951. ■ Where a trespass consists of a physical entry upon the lands of another and taking possession thereof under such circumstances as to indicate an intention that the trespass shall be permanent, the law may regard the wrong done in such case as complete at the time of the original entry, and the statute of limitations runs from that time. (*Kafka* v. *Bozio,* 191 Cal. 746, 750 [218 P. 753, 29 A.L.R. 833].) Where, however, from the character of the trespass it is not to be presumed that the wrongful conduct will be continued, successive trespasses give rise to successive causes of action, and an action may be brought at any time to recover the damages which have accrued within the statutory period, although the original trespass occurred before that period, provided that the plaintiff has not permitted such time to elapse as will vest in the defendant a right by prescription. (*Williams* v. *Southern Pac. Co.,* 150 Cal. 624, 625-626 [89 P. 599].) In all cases of doubt respecting the permanency of the injury, the courts are inclined to favor the right to successive actions. (*Kafka* v. *Bozio, supra,* p. 752.) The circumstances attending appellant's nonuser of the road for long periods of time would seem to negative any intention that the trespass was to be

permanent. Neither she nor Mr. Reynolds built the road, and although she did install cattle guards late in 1947, they were, according to her own testimony, permitted to fall into a state of disrepair through neglect and nonuser of the road. The evidence would not support a finding that she gained an easement by prescription, and we are satisfied that the trial court correctly concluded that respondent's action was not barred by the statute.

Appellant next contends that there was no finding on the issue of the statute of limitations. As hereinbefore pointed out, appellant was granted leave to file an amendment to her answer to the second amended complaint settling up the statute of limitations, and she did so, numbering the only paragraph in said amendment as "X." She also entitled this amended pleading (no doubt, inadvertently) as "Amendment to Second Amended Answer" although it states that it is an amendment to the answer to respondent's second amended complaint.

Paragraph IX of the findings of fact reads: "Except as otherwise herein*able* specifically found, all of the allegation of the complaint and answer to the cross complaint are true and none of the material allegation or ~~denials of the answer and~~ cross complaint and amendment to the Second Amended Answer is true."

Appellant argues that there was no finding that the allegations of paragraph X of the amendment to defendant's answer to plaintiff's second amended complaint are untrue, and cites a number of authorities holding that the finding by a court that all the material allegations of a pleading are true or untrue is insufficient because it is uncertain as to which of the allegations the court deems material.

This contention is entirely devoid of merit because the only allegation in what appellant entitled the amendment to the second amended answer is the one setting up the statute of limitations, and the reference thereto as a material allegation is therefore of no importance. Any apparent confusion in the findings was no doubt caused by appellant erroneously entitling the amendment to the answer to the second amended complaint as "amendment to second amended answer."

Appellant contends also that she has a license to use the roadway, which license became irrevocable by virtue of her expenditures for installation of a road. It is apparent from the pleadings in this action and from the remarks and

stipulations of counsel at the trial, that the parties proceeded under the theory that an easement, only, was claimed by appellant over the Carbine land. In paragraph III of appellant's answer she alleged that "said right of way and easement was granted to this defendant by said JOHN EDWARD CARBINE and established by said judgment entered in the action of DORA LORAINE MEYER, Plaintiff v. EDWARD CARBINE, JOHN CARBINE, MIKE CARBINE, . . .''

As stated by this court in *MacKenzie* v. *Angle*, 82 Cal.App. 2d 254, at page 263 [186 P.2d 30] : "A rule, early established and long adhered to in the courts of this state, is that questions not raised in a lower court will not be considered on appeal. [Citing cases.]''

As stated in 3 California Jurisprudence 2d, Appeal and Error, section 140 : "The rule is founded upon considerations of practical necessity in the orderly administration of the law and of fairness to the court and the opposite party, and upon the principles underlying the doctrines of waiver and estoppel.''

And as this court said in *Munfrey* v. *Cleary*, 75 Cal.App.2d 779, at page 785 [171 P.2d 750] : "Also as a general rule where a case has been tried upon one theory that theory must be adhered to on appeal, and a party who has tried his case wholly or in part on a certain theory, which theory was acted upon by the trial court, cannot, on appeal, change his position and adopt a different theory, since to do so would be unfair to the trial court and to opposing counsel. [Citing cases.]''

But even if appellant's contention that she has a license to use said roadway which became irrevocable by reason of her expenditures in the installation of a road could be considered on this appeal, we are convinced that this contention could not be sustained. The record shows that neither appellant nor Mr. Reynolds built the road, and although she did install cattle guards late in 1947 they were permitted to fall into a state of disrepair through neglect and nonuse of the road. ■ Furthermore, it is clear that respondent never at any time consented to or acquiesced in the use of said road by appellant, and she is not bound by the act of her joint tenant in purporting to grant an easement to Albert G. Reynolds, appellant's predecessor in interest. As stated in *Oberwise* v. *Poulos*, 124 Cal.App. 247, at page 251 [12 P.2d 156] :

"One joint tenant or tenant in common cannot bind his

cotenant by any contract which he may make relating to the common property. (*Sarina* v. *Pedrotti,* 103 Cal.App. 203 [284 P. 472] ; 7 Cal.Jur., p. 358; 33 C.J., p. 913.) So one cotenant cannot bind his cotenants by the grant of an easement over the common property (*Pfeiffer* v. *Regents,* 74 Cal. 156 [15 P. 622] ; *East Shore Co.* v. *Richmond Belt Ry.,* 172 Cal. 174 [155 P. 999] ; *Waterford Irr. Dist.* v. *Turlock Irr. Dist.,* 50 Cal.App. 213 [194 P. 757] ; 7 R.C.L., p. 884), although he may by lease or license grant to another the right to enjoy the common property in his stead to the same extent that he is entitled to enjoy it by reason of his cotenancy. (*Waterford Irr. Dist.* v. *Turlock Irr. Dist., supra*: *Lee Chuck* v. *Quan Wo Chong & Co.,* 91 Cal. 593 [28 P. 45].) A joint tenant may likewise convey his interest to a stranger, in which event the grantee becomes a tenant in common with the other owner. (*Tilden* v. *Tilden,* 81 Cal.App. 535 [254 P. 310] ; *Green* v. *Skinner,* 185 Cal. 435 [197 P. 60] ; *Pepin* v. *Stricklin,* 114 Cal.App. 32 [299 P. 557].) ''

And as stated in *Stark* v. *Coker,* 20 Cal.2d 839, 844 [129 P.2d 390] :

''Plaintiff had no knowledge of the purported accord and satisfaction and did not authorize it. The status of the owners of the note being joint tenancy, it is no more than proper under the circumstances that the rules with respect to joint tenancy be applied. One of the characteristics of joint tenancy is the equality of the interest held by the respective tenants; (Civ. Code, sec. 683) and defendants by giving the note and trust deed were advised of that rule. It has been consistently held that one joint tenant has not by reason of the relationship any authority to bind his cotenant with respect to the latter's interest in the common property. (See *Oberwise* v. *Poulos,* 124 Cal.App. 247 [12 P.2d 156] ; *Simpson* v. *Bergmann,* 125 Cal.App. 1 [13 P.2d 531] ; *Swartzbaugh* v. *Sampson,* 11 Cal.App.2d 451 [54 P.2d 73].) ''

We are satisfied that the record supports the findings and judgment. Issues of fact must be determined by the trial court and an appellate tribunal is bound by the familiar rule that its power begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court. Appellant's argument in the main has been an argument as to the weight of conflicting evidence, and if the judgment had been in her favor it would be very

helpful in pointing out evidence tending to support such a judgment, but in view of the judgment adverse to appellant the testimony pointed out and relied upon by her merely accentuates the conflict in the testimony.

The judgment is affirmed.

Van Dyke, P. J., concurred.